## COUNTY OF PROVIDENCE, MARCH TERM, 1873, AT PROVIDENCE.

PRESENT :

Hon. GEORGE A. BRAYTON, Chief Justice.
Hon. THOMAS DURFEE, } Justices.
Hon. ELISHA R. POTTER, } Justices.

## THOMAS S. ALDRICH & others *vs.* RANDALL B. WILCOX & others.

A sheriff must not levy on real estate by execution, when he can find personal property.

Where real estate is levied on, the officer must not sell the whole unless necessary, but must ascertain how much it will take to pay the debt and costs, and sell that only.

It is an oppression to demand cash on the spot by the terms of sale. A reasonable time for payment, to be determined by the particular circumstances of each case, should in all cases be allowed.

Where it appeared that at a sheriff's sale of real estate the land had been sold for $125, being worth at least $2,700 over and above all incumbrances except right of dower, the estate consisting of six portions, all of which were sold, and five of which were each unquestionably worth several times the amount of the debt and costs, and cash was required upon the spot by the terms of sale, and the officer stated that the estate was incumbered without stating how much, and it appeared in evidence that the only persons present were the officer, one person who was kept from bidding by his impression that the sale was for the protection of the family, and another who bid it off, who was carried thither by the officer himself for the purpose of bidding, and did not know what he was bidding for; *held*, that a court of equity would declare the sale void and order it to be set aside.

Decision in *Reynolds* v. *Hoxie*, 6 R. I. 463, reaffirmed, that a sheriff may for good cause adjourn an execution sale.

*Held*, affirming *Tillinghast, Receiver*, v. *Champlin*, 4 R. I. 173, that the rule that where a bill in equity places the relief which it seeks upon the ground of actual fraud in the respondent, and the proof fails to support it on that ground, the bill must be dismissed, applies only when actual or moral, as distinguished from constructive fraud, is charged.

BILL IN EQUITY to set aside a sheriff's sale of a farm in Lincoln, R. I., and a mortgagee's sale of another tract of land in the same town. The facts of the case are stated in the opinion of the court.

*Currey & E. C. Mowry*, for complainants.

*Browne & T. C. Greene*, for respondents.

POTTER, J. The bill in this case is brought by Thomas S. Aldrich, and William G. R. Mowry his assignee, for benefit of creditors, against Ansel Carpenter, a deputy sheriff, who sold at sheriff's sale certain property of said Aldrich, and against Randall B. Wilcox, who purchased it. The charges are fraudulent collusion to get the property of said Aldrich under pretence of securing it for his wife and family. The wife is not made a party, and we think need not be, as no relief is asked against her. The prayer of the bill is to set aside the sales, and to order a reconveyance, and for general relief. The answer admits the judgment, deeds, and papers, sales and dates, as stated by complainants, but denies all fraud and collusion, and claims that the sale was legal and fair, and that the purchase was a *bonâ fide* purchase for the benefit of Wilcox himself.

The bill relates to two different tracts of land, sold under somewhat different circumstances, and we will therefore consider them separately. 1. The Bucklin farm. This was sold on the 23d day of July, A. D. 1860, on execution for $73 and costs, by Carpenter, as deputy sheriff, to Wilcox, for $125, and was subsequently sold again, on an execution for costs in another suit, by R. W. Potter, deputy sheriff, to Carpenter, on the 14th July, 1863, for $10. It is claimed by the complainants that the officer had no right to sell the real estate while there was personal property enough at hand. See Revised Statutes, 1857, page 475, chap. 195, § 10. The complainants claim there were four horses, cows, team wagons, other wagons, stock and tools on the farm, worth over $1,000. And disinterested witnesses testify that it was worth from $700 to $1,000. There was no intima-

tion or suggestion that there was any incumbrance on it, or any doubt as to its ownership.

It is well known that by our old laws, real estate was looked upon with peculiar favor, and could not be attached for debts. The first innovation was in 1739, when an act was passed allowing the writ to issue against real estate, but only in case the body or personal estate could not be found within the state. And so the execution could not be levied on real estate, if either the body or personal estate could be found. And this was continued in force in the Digests of 1798, p. 202 ; of 1822, p. 157 ; and of 1844, p. 116 ; and it was not until 1857 (while the provision as to attaching on writs remained the same, pages 433 and 439) that the word body was omitted, and execution was allowed to be levied on real estate if no personal estate could be found. R. S. 1857, p. 475, § 10. " When the goods and chattels of the defendant sufficient to answer the amount of the execution cannot be found by the officer charged with the service thereof, his real estate may be levied on by execution," &c., &c.

The words of the statute are sufficiently plain, that the officer cannot levy on land if he can find personal property. See *Kenyon* v. *Clarke*, 2 R. I. 67–72. And the circumstance that the officer passed by this considerable amount of personal property is a circumstance to be weighed in judging of the motives which governed the sale.[1] It is claimed too that there was a mistake in one of the notices posted up at the hotel near by, and which Aldrich would be most likely to see. On examining this notice, it would seem to have been at first written 18 (a very natural mistake, as the levy was made on the 18th), and subsequently altered to 23. But without knowledge of the other facts in the case, it would be pretty difficult to tell whether it was 23 or 28, the *th* being left out.

Aldrich was away. His wife was in the house a few feet from the place of sale, and had money enough, though not immediately at hand, to have paid the debt and costs.

The Bucklin farm is claimed to be worth $4,000. It cost

---

[1] The provision of the law under which this question arose is omitted in the General Stat. of 1872.

$3,000 when purchased, was assessed at $2,800, and there is testimony to show that the assessments were generally under value, and the testimony of two intelligent witnesses, Clark and Sayles, fixes its value at $3,000. It was mortgaged for $309. Here is a farm worth at least $2,700 over and above all incumbrances, except the right of dower, sold for $125. In March, 1864, Mrs. Aldrich was divorced, and it is charged that she was advised and assisted in this by the defendants. This farm consisted of six portions or separate lots. One of the lots was worth about $100, and each of the other lots was without dispute worth several times the amount of the debt and costs.

The statute provides (R. S. 1857, chap. 195, § 13) that " if no person appear to redeem the estate, the officer shall sell the same, or so much thereof as shall be sufficient," &c., &c. The statute evidently contemplates that the officer is not to sell the whole unless necessary. How much it would take, could easily be ascertained by any officer disposed so to do. If in no other way, selling a lot at a time, or putting it up by the quantity to be measured off afterwards, would settle it.

An officer, while he has duties to perform towards the creditor, has also duties to the debtor and the public. As an officer of the state, appointed to execute the laws, he is bound to take care that those laws be not through his instrumentality made a means of abuse and oppression. No directions of any plaintiff could justify him in this.

By the terms of sale, cash was required upon the spot, a deed having been prepared beforehand. This of itself would be an oppression. It would defeat the object of the law in having a fair sale, and would almost invariably lead to a sacrifice of property. Few can carry with them the amount necessary for large purchases. A reasonable time should in all cases be allowed, and what was reasonable would depend upon the circumstances.

We consider that the decided cases on this subject would fully justify the court in setting aside this sale on the ground of oppression and inadequacy of price. It will be observed in the cases which we will now review, that while in some of them the application for relief was made in the suit itself before its completion, there are quite a number of them where relief was granted on an independent bill in equity, and that gross inade-

quacy in price, a sale *en masse*, and demanding cash down, are recognized as circumstances which, while not always showing intentional fraud on the part of the officer, are yet considered as entitling to relief.

While in dealings between parties in ordinary contracts, mere inadequacy of price will not alone be enough to set aside a sale, this being necessary to security of titles, it is still well settled that a gross inadequacy, such as will shock the moral sense, will be ground for setting such a sale aside.

This language, now become settled law, it is believed was first used by Lord Eldon in *Coles* v. *Trecothick,* 9 Ves. 246, and was repeated by him in *Astley* v. *Weldon,* 2 B. & P. 351.

But the cases are numerous in which relief from sales by sheriffs and tax collectors has been given for sufficient reasons, even after deed given, and although no fraud was shown in the purchaser, and where it has been held that the proper remedy was by bill in equity.

In *Jackson* v. *Roberts,* 7 Wend. 83–87, the Supreme Court of New York, A. D. 1831 (Savage, Sutherland, and Nelson), while refusing to allow parol evidence to contradict an officer's return of a sale on execution, say : " We see no formidable mischief likely to result from the operation of such a principle. A party, who may be injured by the mistakes of a sheriff, can have relief by a summary application to the court, or through the medium of a court of equity."

*Groff* v. *Jones,* 6 Wend. 522. A sheriff sold real estate worth $10,000 on execution. It was sold to a junior judgment creditor. Motion by a party who had a subsequent execution, for rule to set aside sale. Sale set aside. Court : " Here real estate worth $10,000 is sold to satisfy a debt of $100, and the property was so situated that a portion of it could have been sold separately," &c.

In the case of *Cranston* v. *Johnston,* 3 Ves. 170, the property of complainant in St. Christopher was sold on execution in suit in which defendant was plaintiff, and was bought by him. The master of the rolls said the estate was sold, not to satisfy the debtor, but to get the estate, which the law of that country never could intend, and for a price very inadequate to the real value. Decreed that the deed, which had been given, should stand as

security only. In the same case, 5 Ves. 277, the master of the rolls confirms his former decision.

And that a sale *en masse*, when less would be sufficient, will be declared void, is recognized in many cases. In *Slater* v. *Maxwell*, 6 Wal. 268, a sale of land for taxes in a body instead of by parcels, and after a deed had been given, was set aside on a bill in equity, which was held to be the proper remedy. In *Day* v. *Graham*, 1 Gilman, 435, it was held that a sale of lots *en masse* and deed given ought to be set aside, but the party was left to file his bill, and on a bill in equity between the same parties (4 Gilman, 389) it was set aside. In a similar case, *Rose* v. *Mead*, 5 Gilman, 171, the relief was refused for deficiency of proof; and see *Crane* v. *Conklin*, 1 Saxton, 346, and *Butler et al.* v. *Haskell*, 4 Des. 652, 697. " Sales *en masse* of real estate held in several parcels are not to be countenanced or tolerated." *Jackson* v. *Newton et al.* 18 Johns. 355, 362.

*Woods* v. *Monell*, 1 Johns. Ch. 502. Bill to set aside a sale. Sheriff sold for $1,200 premises claimed to be worth over $10,000. Kent, Chancellor : " It is in general the duty of the officer to sell by parcels and not the whole tract in one entire sale. . . . . Nor does the officer act within the spirit of his authority if he sell more than is requisite to satisfy the execution. To sell a whole tract when a small part of it would be sufficient or probably sufficient for the purpose, is a fraud which ought to set aside the sale." The bill was, however, dismissed for deficiency of proof on these points. See *Troup* v. *Wood*, 4 Johns. Ch. 228, 254, a case of oppressive sales on execution.

*Hewson* v. *Deygert*, 8 Johns. 333. Sale on execution. Court: " The proper course both on sales of real and personal property is to sell only so much of the property charged as will probably satisfy the execution, and which can conveniently and reasonably be sold separately. *Wilson* v. *McDonald*, 6 Johns. Ch. 201. Execution for $480 levied on personal property of a man of ample means. Terms of sale, ready pay in specie. The creditor, chief bidder. The bill prayed for relief. Kent, Chancellor : " The forced sale and the refusal of delay and the demand of specie, were unmitigated acts of severity for the sole purpose of extortion. . . . . Property to the value of $1,800 or $2,000 was sold for less than $300. . . . . Such abuse of process is not to be

tolerated. It would bring disgrace upon the administration of justice. Nothing can be more injurious to public morals, or excite greater alarm in the minds of the people, than to suffer the process of the law to be made the instrument of extortion." The debtor had asked for delay to get the specie, and it had been refused.

The same case, *McDonald* v. *Wilson,* came before the Court of Errors in 2 Cow. 139. Savage, C. J. 186–190 : " The sheriff ought not to lend himself to any one, and thus become the instrument of gratifying the vindictive feelings of an exasperated party. . . . . He was bound to exercise a proper discretion, and when he saw there must be a great sacrifice of the respondent's property, it was his duty to have postponed the sale." The chief justice and the majority of the court, 16 to 11, reversed the chancellor's decree on other grounds.

In the case of *Baring* v. *Moore,* 5 Paige, 48, a resale by a master had been ordered. The petitioner had bid highest, but the master under advice of the plaintiff required immediate payment in specie, refused to give any time, and reported to the court that no sale was made. The effect of this if confirmed would be that the property would go to a much lower bidder at the former sale. The court condemned the practice, and ordered the deed to be made to the petitioner.

*Rowley* v. *Brown,* 1 Beav. 61. The court " will disallow in every case a lumping sale by the sheriff, where from the distinctness of the items of property he can make distinct sales. It is essential to justice and to the protection of unfortunate debtors, that this should be the general rule. Any other would lead to the most shameful sacrifice of property," &c., &c. This was a motion for rule to set aside sheriff's sale. Three houses standing on same lot, and subject to one ground rent. Set aside.

*Stead's Ex'rs* v. *Course,* 4 Cranch, 403, was a tax sale under the laws of Georgia. By law the collector was to proceed against the defaulter by distress and sale of the goods and chattels, if any be found, otherwise on the land of the defaulter or so much thereof, &c. C. J. Marshall says : " The validity of the sale depends on the authority of the collector and the fairness of the sale. . . . . He must act in conformity with the laws from which his power is derived, and the purchaser is bound to in-

quire whether he has so acted. . . . . The collector is authorized to sell land only on the deficiency of personal estate; and then to sell only so much as is necessary to pay the tax in arrear. . . . . If a whole tract of land was sold when a small part of it would have been sufficient for the taxes, . . . . the collector unquestionably exceeded his authority," &c. This was a bill in equity to set aside the tax collector's deed as fraudulent. The defendant pleaded title under the tax collector's deed, and the court below sustained the plea. Decree reversed with directions for defendants to answer, &c.

In *Tiernan* v. *Wilson et al.* 6 Johns. Ch. 411, Wilson, deputy sheriff, sold on execution for $10.25, one half of two lots of land containing 446 acres, worth $800 : sold for $13.00. Bill to set aside as collusive and fraudulent. Chancellor Kent set aside the sale as fraudulent and void in law, although he acquits the deputy sheriff of fraud, and there was no evidence of fraud in the defendants, the purchasers. " Such a sale carries an abuse on the very face of it." " It was a perversion of the spirit and policy of the power with which the sheriff was intrusted." " There must be a sound discretion exercised by the officer, and each case will furnish a rule applicable to it under all its circumstances." " The proposition is not to be disputed, that a sheriff ought not to sell at one time more of the defendant's property than a sound judgment could dictate to be sufficient to satisfy the demand, provided the part selected can be conveniently and reasonably detached from the residue of the property, and sold separately." " There was no excuse for such an outrageous breach of duty," &c., &c. " Although there was no actual corruption on his part, yet such a gross act of negligence and abuse of trust must be attended with payment of costs." Sale set aside, and the purchaser ordered to deliver up the deed to be cancelled.

In *Kloepping* v. *Stellmacher*, 6 C. E. Green Ch. 328, property worth $1,500 was sold by the sheriff for $52, and deed made. The court held it was gross inadequacy, and although they acquitted the sheriff of blame, held that as the owners were foreigners, and although notified of the sale, did not attend, the sale should be declared void, and directed the defendant to reconvey on payment of debt and expenses.

In *Kinney et al* v. *Knoebel et al.* 51 Ill. 113, $35,000 of property was sold *en masse*, to collect $1,500 due on execution and deed given. It was susceptible of division, " but was so sold at the instigation of parties who thought they could thus easier effect a settlement of an estate. The complainants were allowed to redeem on terms. And as to the purchaser, the court say, " Even if the fact that the execution under which the sale was made bore so small a proportion in amount to that for which the sale was made was not sufficient notice," still the arrangement charged him with notice. See also *Byers* v. *Surget*, 19 How. 303, 311.

*Penn et al.* v. *Craig et al.* 1 Green Ch. 495. Bill to set aside sale on two executions. Deeds given. A tavern house and lot, and a farm lying separate, were sold in the lump. " The duty of a sheriff to sell property capable of a natural division in parcels is so obvious, that we should suppose no officer, desirous of discharging his trust faithfully, would ever fail to do so, and yet it is a very frequent ground of complaint." Citing *Merwin et al.* v. *Smith et al.* 1 Green Ch. 185 ; *Woods* v. *Monell*, 1 Johns. Ch. 502, &c., &c. In New York this provision has been incorporated into the revised statutes. " The practice of selling in one parcel property which is separate should be frowned upon and discountenanced as unjust and oppressive." But it does not follow that every sale so made should be set aside. In this case thirteen years had elapsed, and besides it was doubtful whether the property would have brought any more if sold in parcels. Bill dismissed without costs. This was not a bill by the former owner, but by the parties complainants in the suits in which the property had been sold.

*Mohawk Bank* v. *Atwater*, 5 Paige, 54. Chancellor Kent: " It is undoubtedly the duty of the sheriff to sell in parcels, whenever the property is so situated that it will probably produce more by that mode of selling, or where a part only of the property is required to satisfy the execution." A sale thus made is not void ; it is at most voidable," &c. This case was decided, however, on other points.

*Campbell* v. *Gardner*, 3 Stock. 423. Petition in the suit to open a sheriff's sale on execution on mortgage foreclosure from chancery and deed given. Property worth $3,500 was sold for

$500. The mortgagor was an aged woman and misled as to the nature of the process served on her. It was insisted that the deed having been given, the matter was beyond the control of the court, and that the only relief was by bill. The court held that a sale here after deed given stood on the same ground as a sale after confirmation in chancery in England, and would be opened for good reason. And that the court would require the purchaser to reconvey. And so in *Seaman* v. *Riggins*, 1 Green Ch. 214, the relief was granted on petition in the suit.

So in other cases of masters' sales after deed delivered. See *Collier* v. *Whipple*, 13 Wend. 224 ; *Requa* v. *Rea*, 2 Paige, 339 ; *Tripp* v. *Cook*, 26 Wend. 143 ; *Howel* v. *Baker*, 4 Johns. Ch. 118. Complainant's attorney, at his request, attended sale on execution (in a case where the complainant was defendant), and bid in property worth $2,000 for $10. The debt was about $80. Bill to have purchaser declared trustee, &c.

Kent, Chancellor : " The purchase was made under circumstances sufficient of themselves (particularly when connected with the fact of his being attorney) to constitute him a trustee for the parties. Such gross inadequacy of price, when taken in connection with the fact that the sale was on a stormy day, and that no persons were present but the sheriff and the defendant, would well warrant an inference of fraud on any other one than the one I have taken. The most reasonable conclusion, and the only one honorable to the defendant, is that he bought intentionally in trust for the parties."

*Seaman* v. *Riggins & Moir*, 1 Green Ch. 214 : " But it is said that it is dangerous to interfere with sheriffs' sales; that they have a right as public officers to exercise a discretion as to sales and the manner of conducting them ; and that if the court will set aside such sales purchasers will not attend. A sheriff is a public officer, and as such has a certain discretion intrusted to him by law . . . . that discretion must, however, be a legal one, and the court will not permit such an exercise of it as shall work injustice and wrong," &c., &c. And in a late case, *French* v. *Edwards*, 13 Wal. 506, the U. S. Supreme Court, in case of a tax sale, held that a provision that an officer should sell the least quantity that would pay the claim was not directory but mandatory, and a violation of it made the sale void. It is said here

that the sheriff had no right to adjourn, or at least that right had not been settled until *Reynolds* v. *Hoxie*, 6 R. I. 463. It had always been the practice to adjourn such sales before that decision, and had never before been doubted, and the court in their decision recognize that such had been the practice and sustain it.

If it is said that if sheriffs' sales are interfered with, it will prevent bidding, and so injure both debtor and creditor, it is enough to reply that they ought not to be, and never have been lightly interfered with. Every man who attends an auction knows the difference between buying cheap, which he has a right to do (and in many cases the debtor is so situated that the purchaser may honestly buy cheap), and those circumstances of gross inequality and unfairness which ought to be held sufficient to put every prudent man on his guard, such a sale as Chancellor Kent says (*Tiernan* v. *Wilson*, 6 Johns. Ch. 411, 413) "carries an abuse on the very face of it." See also *Kinney et al.* v. *Knoebel et al.* 51 Ill. 113, 124.

In the present case, besides the circumstances attending the sale which we have mentioned, the complainants have brought forward other evidence. Alleged interviews between Mrs. Aldrich and the defendants ; statements made by them to several and disinterested witnesses, that the object of the sale was to save the property for Mrs. Aldrich and the family, the husband being very intemperate ; evidence that Mrs. Aldrich was permitted to enjoy the property for some time under a lease or bond (it is disputed which), which was afterwards destroyed ; evidence that Wilcox did pay Mrs. Aldrich money for a release of her rights, which is denied on the other side, and the fact that the same persons were concerned in all the sales of this and the other tracts.

Mr. Goff, the only other person present, does swear that he was prevented from bidding by understanding that it was for the benefit of the family. He cannot say how nor from whom he got this impression, but he did get it at the sale. Here, then, although the inadequacy of price is not so great as in some of the cases cited, there is a combination of all those circumstances which, taken separately, have been held to make such a sale void.

The debt was a small one ; the officer passed by personal property he might have sold ; he sold the whole farm when a small portion of it would have been enough ; he required cash down ; he

stated to those present it was incumbered, without stating the amount; and the only persons present were the officer himself, one person who was kept from bidding by his impression that the sale was for the protection of the family, and the person who bid it off, who was carried there by the officer himself, and who testifies that he did not go for the purpose of bidding, and did not know what he was bidding for. Here were facts enough to put any purchaser on his guard. Then we have circumstances connected with the other sale, and the additional fact that the same persons were the actors in the sale of the other tract. That there should be relief against a sale conducted as this was, is not only the dictate of justice, but is well supported by the authorities we have cited, if anyone could desire authority for a matter of common honesty.

In the present case we must either believe that two citizens, one of whom has been an officer of this court in respectable standing for (it is said) seventeen years, have committed an act of oppression under the form of law, or on the other hand that they made the purchase for the sake of saving the property for the wife and children, which, although not strictly legal, would not only be honest but would be praiseworthy. If they wished to keep the husband from spending his property, the law points out the mode, namely, to have a guardian appointed. And it is easier to believe that their act is of the latter character, honest and praiseworthy, than that they intended to oppress and in effect defraud the whole family. Even apart from the circumstances of the sale, we think there is a preponderance of evidence to entitle the complainants to relief.

If we were to consider only the evidence which relates to the time of sale, there are conflicts of testimony which would leave the matter in doubt. But when we consider the statements made by both defendants afterwards as throwing light back upon the sale (leaving out of consideration the evidence of the parties and the family, which has been strongly attacked, and leaving out the evidence of Sayles, who, it is argued, might be mistaken because he was hard of hearing), we have the statement of two credible and intelligent witnesses, who had reasons for inquiring and recollecting, who can hardly be mistaken as to what they assert, and the matter seems sufficiently proved. Add to this the circumstances of the sale, and it hardly admits of a doubt.

Some of the evidence is only explicable on the ground that the parties had no very definite plan in the beginning, or that their arrangements were afterwards changed, and taking all the evidence together we are satisfied that the complainants are entitled to relief. The case of the second sale of the same property for $10 will not need any special remarks. If the other sale was valid, there was nothing left for this second sale.

It is claimed by the defendants that the charge here is fraud, and as no fraud is proved the complainants cannot have relief. As we do not understand the charge in the present case to be of gross moral turpitude, but rather of constructive fraud, we do not consider that it comes within the spirit of the decisions of this court heretofore made. *Tillinghast, Receiver*, v. *Champlin et al.* 4 R. I. 173.

Generally when a sale is set aside for inadequacy, &c., it will be on the principle of redemption, allowing the deed to stand as security for all money honestly advanced; 1 Sugden on Vendors, 326; Story's Equity Jur. § 344; unless when actual fraud is shown. Sudgen, Ibid.; *Campbell* v. *Macomb*, 4 Johns. Ch. 526; *Boyd* v. *Dunlap*, 1 Johns. Ch. 482.

As to the second tract — the meadows. Mrs. Aldrich in her own right held a mortgage on these for $300, and Albert Eddy held a second mortgage for $300. Mrs. Aldrich, without her husband, assigned her mortgage to Carpenter, and Carpenter, by mortgage sale on January 11, 1862, sold these meadows to Wilcox for $400. The deed to Wilcox under this sale purports to be a deed by Thomas S. Aldrich, but is signed by Carpenter only, in his own name. Eddy knew nothing of this sale until it was over. Subsequently Wilcox bought the second mortgage of Eddy for $125. Eddy says he saw Mrs. Aldrich and told her he should make a fuss, — should bring an action if his debt was not settled. He saw her a second time, and she asked how he would settle, and he named a sum, and subsequently Wilcox came to him and took an assignment of it and paid him $125, which he wisely preferred to a lawsuit. He cannot say but he saw Wilcox about it once before.

In this case also the land, at the time of the sale, was subject to dower, and there is more conflict of evidence as to the value of it. At the sale, Carpenter, Wilcox, the auctioneer and the

owner, Aldrich, were present, and the terms were cash down on the spot. The assignment of the mortgage of this second tract was of course void at law; and so the sale under it.

But as we have proceeded in this opinion on the ground that the defendants were trying to preserve the property for the family, we shall let the deed of the Bucklin farm stand as security for all sums *bonâ fide* advanced by the defendants in the purchase of both tracts, for the benefit of the family, including the purchase of the mortgage from Mrs. Aldrich (the second mortgage having been purchased by and as against Aldrich, belonging to Wilcox), believing that this course will effect the most substantial justice in the case.

*The question of costs up to this time is reserved.*