EDWARD A. TAFT *et al vs.* FRANCIS M. DIMOND *et als.*

A. conveyed to B. real estate in fee simple with warranty. After the death of A. his heirs brought a bill in equity against B., alleging that the conveyance was in fact to B. as trustee for the use of A., and was without consideration :

*Held*, that an express trust must be proved, an implied trust being inconsistent with the warranty of A.'s deed.

*Held*, further, that such express trust in realty was within the statute of frauds, 29 Car. 2, cap. 3, and must be shown by writing signed by B.

When letters are relied on to prove a trust they must identify the property and disclose the terms of the trust. Proof that the letters relate to the property in question must be demonstrative.

A. assigned his property for the benefit of his creditors, who were satisfied without exhausting the property, the legal title to which remained in the assignee during A.'s life. After A.'s death the assignee conveyed the residue, being realty, to A.'s heir at law, a daughter. Under *Shepard* v. *Taylor*, 15 R. I. 204, this realty, on the daughter's death intestate, would descend in equal moieties to her paternal and maternal kindred, not as ancestral estate to her paternal kindred.

BILL IN EQUITY to establish a trust. The facts involved are stated in the opinion of the court.

*William G. Roelker & Rathbone Gardner*, for complainants.

I. The statute requires, not that a trust be created by writing,

but merely that it be manifested or proved by writing. No particular form of words is necessary. 2 Washburn on Real Property, 502, 505; Brown on the Statute of Frauds, §§ 97, 104; 1 Greenleaf on Evidence, § 266; *Barrell* v. *Joy*, 16 Mass. 221; *Pratt* v. *Ayer*, 3 Chand. Wisc. 265; *Brown* v. *Coombs*, 29 N. J. Law, 36; *Inhabitants of Scituate* v. *Inhabitants of Hanover*, 16 Pick. 222.

The existence of a trust may be manifested :

1. By a deed, even if it is not delivered. 1 Perry on Trusts, § 103; *Alexander* v. *Brame*, 7 De G., M. & G. 525; *Urann* v. *Coates*, 109 Mass. 581; *Otis* v. *Beckwith*, 49 Ill. 121.

*a.* The trust once created by deed, it will be enforced though the settler subsequently destroys the deed. 1 Perry on Trusts, § 104; *Stone* v. *King*, 7 R. I. 358.

*b.* The existence and the contents of a deed which is lost, or not produced, may be proved by parol admissions. 1 Greenleaf on Evidence, §§ 96, 97, 171, 203; *Earle et ux.* v. *Picken*, 5 C. & P. 542; *Slatterie* v. *Pooley*, 6 M. & W. 664; *Inhabitants of Orleans* v. *Inhabitants of Chatham*, 2 Pick. 29; *Loomis* v. *Wadhams*, 8 Gray, 557.

2. By statements contained in a letter. 4 Kent Comment. 305; Lewin on Trusts, 30; Roberts on Frauds, 95; *Montague* v. *Hayes*, 10 Gray, 609; *Baylies* v. *Payson*, 5 Allen, 473.

3. By entry in books or a memorandum of account. 1 Perry on Trusts, § 82; *Fall River Whaling Co.* v. *Borden*, 10 Cush. 458, 472; *Perkins* v. *Perkins*, 134 Mass. 441; *Hollinshea* v. *Allen*, 17 Pa. St. 275.

II. Where there is any competent written evidence that the party holding the legal title is a trustee, parol evidence is admissible to show the nature of the trust and the relations of the parties. 1 Perry on Trusts, § 82; *Cripps* v. *Lee*, 4 Bro. 472; *Hutchins* v. *Lee*, 1 Atk. 447.

III. The declaration of trust, if in writing, may be made either before or after the conveyance to the trustee. 2 Washburn on Real Property, 504, 505; *Barrell* v. *Joy*, 16 Mass. 221; *Jackson* v. *Moore*, 6 Cow. 706.

IV. A constructive trust may result from the relation of the parties and inadequacy of consideration. 4 Kent Comment. 308;

*Brogden* v. *Walker*, 2 Har. & J. 285; 1 Perry on Trusts, § 194.

*Charles A. Wilson & Thomas A. Jenckes*, for respondents.

*July* 27, 1889. DURFEE, C. J. Sarah A. Brayton, in November, A. D. 1882, conveyed certain real estate described in the bill, by deed with warranty in fee simple, to the defendant, Francis M. Dimond. She died in March, A. D. 1884. This suit is by her heirs at law. The bill alleges that the deed was without consideration, and was made only for the purpose of vesting the legal estate in Dimond for the use of the grantor, to enable him the better to manage it in her behalf, and that, from the making of the deed until her death, Dimond collected the rents and income for her, accounting to her for them, and acknowledging that he held the estate as trustee for her; that he has so acknowledged since her decease, but that more recently he denies the trust. The bill prays that he may be decreed to convey the estate to the complainants, as heirs at law of said Sarah, so as to vest it in them according to their interests as such, and for other relief. The answer denies that the conveyance was on the trusts alleged or without consideration, and alleges that it was for a valuable consideration, and free from any trust for the grantor. In regard to the consideration, the defendant Dimond testified that, at the time of the conveyance, he held a note against the grantor for money lent, which note he then gave up; that he had assisted her in various ways; and that she said that, if there was any of her property left, she wanted it to go to him and his wife. He also testified that the rents were paid to her after the conveyance, according to agreement, as she had nothing else to live on ; that the estate is taxed for $6,000 ; that it was, when conveyed, subject to a mortgage for $2,500 ; and that the deed to him was recorded immediately after it was given.

The complainants claim on the ground of an express trust, any trust by implication being inconsistent with the covenant of warranty in the deed. Their claim is within the seventh section of the statute of 29 Car. 2, cap. 3, known as the statute of frauds and perjuries, that section, though never expressly reënacted here, being recognized as a part of the law of the State. The statute of frauds and perjuries is one of the statutes which were declared

to be in force in this State by the act of 1749. The seventh section enacts that " all declarations or creations of trusts or confidences of any lands, tenements, or hereditaments shall be manifested and proved by some writing, signed by the party who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect." The question here, then, is whether the complainants, as heirs at law of Sarah A. Brayton, show in respect of the estate a trust in their favor, manifested and proved by some writing signed by Dimond.

Several witnesses produced by the complainants testify to statements orally made by Dimond, tending to show that he held the estate in trust for Mrs. Brayton. Such testimony is clearly ineffectual under the statute and cannot be regarded. Several witnesses also testify to oral statements by Dimond tending to show that, after the estate was conveyed to him, he reconveyed it to Mrs. Brayton. The complainants contend that this is testimony which entitles them to relief. The trouble with it is that, if it proves what it is claimed to prove, it proves too much; for if it be true that Dimond reconveyed the estate to Mrs. Brayton, the estate thereupon revested in her, and upon her death descended to the complainants as her heirs at law, so that, instead of Dimond's having it as trustee for them, they already have it for themselves. Of course the disappearance of the deed by which Dimond reconveyed, or even its destruction, would not revest the estate in him. *Stone* v. *King*, 7 R. I. 358.

One of the witnesses for the complainants testifies that Dimond, speaking to the witness in regard to Mrs. Brayton's limited income, said that it all or nearly all came from the estate in question ; also that she had conveyed the estate to him to protect it from attachment, and that for her security in case of his death he had made a deed of it to her, which would be found in his safe with his other papers. Dimond, testifying, admits making the statement, but says, in explanation, that Mrs. Brayton wanted him to see her paternal uncle and ask him to assist her ; that, knowing there was dissatisfaction on account of the conveyance to him, he made a quitclaim deed back to her, without her knowledge or any intention of reconveying, but only so that he might be able to say that he had made it, to make a better impression ;

that instead of going directly to the uncle he went to the witness, a nephew of said uncle and a cousin of Mrs. Brayton, for the purpose of sounding him in regard to his chance of success, and in the course of the conversation made the statement, and that, getting no encouragement, he tore up the deed immediately on his return, Mrs. Brayton never knowing anything about it.

Could the deed, supposing it to have been thus kept by Dimond among his papers without delivery, be regarded as a declaration of trust? Clearly not, if we accept Dimond's account. Browne on the Statute of Frauds, § 354. But supposing it to have been made as security for Mrs. Brayton in case of his death, could it be so regarded? We think not. It purported to be, not the declaration of a trust, but the conveyance of an estate. Doubtless, if such a deed were found among the papers of the legal owner of such an estate after his death, it might be conjectured that he held the estate in trust for the grantee named therein, and had made the deed for the purpose of passing the legal title to such grantee; but this would be only one of several conjectures which might suggest themselves, and the deed could not, even when read in the light of circumstances such as those in the case at bar, be held to manifest or prove a trust. In the case at bar, it is only when the deed is connected with the oral statements of the grantor that it has any significance as proof, and then only as confirmatory of those statements, and those statements, as we have seen, cannot be regarded.

Dimond when giving his deposition was asked in cross examination whether, when he had charge of Mrs. Brayton's business and property, he kept books of account with her. His answer was, "I did not. I put on a slip of paper what amount there was." He also deposed that he showed the slips to Mrs. Brayton. The complainants contend that these slips were sufficient to establish the trust. We do not think the testimony shows that they were. It does not show that they were signed, or that they were more than the baldest memoranda. *Homer* v. *Homer*, 107 Mass. 82, 86.

After the decease of Mrs. Brayton the defendant Dimond, in a letter to one of her maternal relatives signed by him, used the following language: "Sarah did make a will giving most to Her-

bert and something to Miss Potter. As we cannot find it, suppose she destroyed it, after being treated so shamefully by that brute. (Now the property goes to the last ones she would have it go to.)" The complainants contend that this writing manifests or proves that Dimond held the estate conveyed to him by Mrs. Brayton in trust for her. It does not do so taken by itself. Where letters are relied upon to establish a trust, the cases say, they must identify the property and disclose the terms of the trust. *Blodgett* v. *Hildreth*, 103 Mass. 484; *Steere* v. *Steere*, 5 Johns. Ch. 1; *Smith* v. *Matthews*, 3 De G., F. & J. 139, 152; *Dyer's Appeal*, 107 Pa. St. 446. There must be demonstration that the letters relate to the subject. *Forster* v. *Hale*, 3 Ves. Jun. 696, 708; 5 Ib. 308. The letter here does not in itself meet these requirements. It does not demonstrate that the property which it refers to is the estate in suit.

The complainants contend that there are circumstances, under which the letter was written, admissible to aid in its interpretation, which show that the estate in suit was meant. They say the personal property was too inconsiderable to elicit the language quoted from the letter. It is inferable from the testimony that Mrs. Brayton had little or no personal property yielding an income, but there is no evidence that she did not have personal property sufficient to account for the language. Dimond testifies that the reference was to household goods and other personal estate.

The estate in suit formerly belonged to Mrs. Brayton's father. He assigned it with other property for the benefit of his creditors. The creditors were satisfied without resort to it, but the legal title remained in the assignees. The father devised his property, including his beneficial interest in said estate, to his wife. At her death the beneficial interest descended to Mrs. Brayton, her only child, to whom the surviving assignee conveyed the legal title. The estate was not ancestral, but, if it was still hers when she died, descended to her paternal and maternal kindred in equal moieties. *Shepard* v. *Taylor*, 15 R. I. 204. The belief was prevalent, however, that the estate, having belonged to the father, would descend to her heirs on his side. The complainants contend that Dimond shared this belief, and wrote the letter under

the influence of it, though Dimond himself denies it. They argue that this fully explains the phrase, "Now the property goes to *the last ones* she would have it go to," since she felt hardly toward the heirs on her father's side for their neglect of her; and they further argue that, if "the last ones" means the heirs on the father's side, the reference must have been to the estate in suit, the personal estate being distributable equally between the paternal and maternal kindred.

The argument is plausible, but is it, as the cases require, demonstrative? The character of the deed from Mrs. Brayton to Dimond should be kept in mind. It is not only absolute in terms, but it contains a covenant warranting the estate to him, his heirs and assigns forever, against the lawful claims of all persons claiming by, through, or under the grantor, very remarkable language if a trust was intended in favor of the grantor. To establish such an express trust, where the conveyance is absolute on its face, it has been held that the evidence should be clear, certain, and conclusive. *Miller* v. *Stokely*, 5 Ohio St. 194. The character of the writing should also be borne in mind. It seems to have been simply an offhand remark dropped parenthetically in a letter. It says "the property," without specification, and so extends to all the property left by Mrs. Brayton, and, to the extent of the personal property at least, is inconsistent with the argument for the complainants. Mrs. Brayton's next of kin on the father's side were an uncle and an aunt; on the mother's side, numerous cousins, none of them closely akin. If she was offended with her uncle and aunt, she was probably indifferent to many of said cousins. If Dimond supposed, as according to the evidence he probably did suppose, when he wrote the letter, that Mrs. Brayton, if she had made her will, would have made it in favor of some particular person or persons, is it clear that he might not have written with epistolary latitude of expression, "Now the property goes to the last ones she would have it go to," unless by "the property" he meant the estate in suit? We are not prepared to answer affirmatively. It does not seem to us that there is the "demonstration" which the cases say is necessary to satisfy the statute. Lewin on Trusts, *56.

The complainants contend that the relation between Mrs. Bray

ton and Dimond was fiduciary, and claim relief on that ground. The bill, however, does not charge any abuse of the relation in procuring the deed, and we can only try the case set out in the bill.                                    *Bill dismissed with costs.*