MARIA GRAZIA DEL GRECO *vs.* EDWARD DEL GRECO *et al.*

JUNE 12, 1958.

PRESENT: Condon, C. J., Roberts, Andrews, Paolino and Powers, JJ.

PAOLINO, J. This is a bill in equity praying that the respondents be declared trustees of certain real estate for the benefit of the complainant and that they be ordered to convey the same to her. The respondents are Edward Del Greco, one of complainant's children, and his wife Elvira Del Greco. A decree pro confesso was entered during the course of the trial against Edward and after a hearing in the superior court on bill, answer and proof a final decree was entered granting the prayer of the complainant. From such decree only the respondent Elvira Del Greco claimed an appeal.

The bill alleges in substance that prior to December 3, 1949 complainant was the owner of certain real estate located at 96 Stella street in the city of Providence; that previous to that date she had adequately furnished the house

and made her home there for many years; that she is over eighty years of age; that for many years she has been in ill health and in an enfeebled condition; that on December 3, 1949, and for a long time prior thereto, respondents were living with complainant in her home; that on or before that date complainant and respondents entered into an agreement whereby she would convey such real estate to respondents; that they were to pay all expenses for maintaining the household so long as she lived; and that they were to provide her with lodging in said premises, food, clothing, medicines, nursing, and would defray all other living expenses.

The bill further alleges that on December 3, 1949 she conveyed the real estate to respondents with the understanding that they would house and care for her for the remainder of her life in accordance with the terms of the aforementioned agreement; that after such deed was recorded respondent Elvira Del Greco became cruel and abusive toward complainant; and that sometime in November 1954 she was forcibly ejected from her home and left destitute by respondent Elvira.

Certain witnesses for complainant, among whom were two daughters, a daughter-in-law and the respondent Edward, testified in substance that complainant's husband died in October 1949; that a family conference was held in November 1949 at which complainant, a daughter, respondents Edward and Elvira, and other members of the family were present; that at this conference complainant said she was willing to give the real estate in question to respondents provided they would take care of her in every way during her life; and that respondents agreed to this.

It appears from the evidence that sometime before December 3, 1949 complainant and respondent Edward went to the office of her attorney and she told him she wanted to turn the property over to respondents. The attorney testified that complainant and her son Edward came to him

to draw up a deed and an agreement to support her; that complainant told him she trusted her son and his wife, the instant respondents; and that on the basis of Edward's assurance that he trusted his wife Elvira to carry on the burden of supporting and caring for his mother in case he died, the attorney told them there would be no need of a formal agreement and he would prepare a deed conveying the propery to Edward and his wife as joint tenants. He further testified that he drew such deed and that it was signed by complainant on December 3, 1949.

The complainant testified that respondents had lived with her for twenty-three years prior to December 3, 1949; that she told her lawyer she wanted to transfer her property to respondents and that they had to take care of her; that after the transfer of the property Elvira did not feed her; and that she used abusive language and caused complainant a lot of trouble.

The respondent Elvira testified that she did not attend any family conference at which her sisters-in-law were present. She denied the existence of any agreement whereby complainant had agreed to transfer the property in question to respondents in return for their promise to support and care for her. She also denied abusing complainant and stated that she did everything she could for her.

The trial justice rendered a decision in which he concluded that complainant had proved by clear and convincing evidence the existence of an agreement as claimed by her. He found that prior to the agreement and the transfer of the property complainant and both respondents were present at a conference which was held to discuss complainant's future in relation to the property; that she indicated at this conference she would transfer the property to respondents on condition that they would take care of her, feed her, provide shelter for her in said premises, furnish clothing, medicines, and nursing care, and defray all other living

expenses; and that respondents definitely agreed to this arrangement.

The trial justice also found that complainant had clearly proved that she had performed her part of such agreement and that respondents had breached the same; that her physical condition was known to respondents; and that, although the attorney who drew the deed was told that she was to get the property back if she was not taken care of, he drew a deed conveying the property to respondents as joint tenants because of complainant's assurance that she could trust them and because of his past close relationship with the family. The trial justice also found that although there was little complaint by complainant against respondents during the first five years, thereafter her complaints resulted in her being ejected from her home. The trial justice thereupon entered a final decree granting the relief prayed for on the ground of a resulting trust.

The respondent Elvira has briefed and argued her reasons of appeal under seven main points. For purposes of clarity we shall treat them in the same manner. Under her first point she contends that the bill should have been dismissed because complainant charged actual fraud in the twelfth and thirteenth paragraphs of the bill and failed to prove the same. In his decision the trial justice said: "At the trial and in their brief respondents tried to make fraud an issue. The bill does not allege fraud in the inception and the complaint of fraud as mentioned in the bill and during the trial is the concept of a sense of 'reprehensible' conduct and type of constructive fraud resulting from the abandonment of the agreement."

We agree with his analysis of the allegations in question. See *Aldrich* v. *Wilcox*, 10 R. I. 405, 417, and *Tillinghast* v. *Champlin*, 4 R. I. 173, 201, 202. However, assuming without deciding that the bill charged actual fraud as claimed by respondent Elvira, the rule set forth in *Grant* v. *Wilcox*, 44 R. I. 94, 97, was changed by the provisions of public laws

1940, chapter 934, now general laws 1956, §9-14-27. The instant contention therefore lacks merit.

Under points II, III, IV, V and VII respondent Elvira contends in substance that the trial justice was clearly wrong in his findings of fact and that he erred as a matter of law in granting the relief prayed for. She argues that the conveyance was voluntary, unconditional and without any previous agreement. But she contends that even if such an agreement is found to exist, she has not breached it and that she and her husband have complied with its terms.

The evidence on these issues is clearly conflicting. The trial justice made findings that such an agreement did exist and that respondents breached it. It is well established that where the evidence is conflicting, findings of fact by a trial justice in equity cases are entitled to great weight and will not be set aside unless they clearly fail to do justice between the parties. *Rooke* v. *Grant,* 77 R. I. 447, 460. The trial justice decided that upon all the evidence complainant had proved her allegations by clear and convincing evidence. From our examination of the evidence we cannot say that his decision was clearly wrong.

The respondent Elvira further contends that even if there had been an oral promise to reconvey, the same is unenforceable because of the statute of frauds, G. L. 1956, §34-11-1. She cites *Taft* v. *Dimond,* 16 R. I. 584, and *Broadway Building Co.* v. *Salafia,* 47 R. I. 263, to support her contention. In our opinion the statute of frauds and the cases cited by respondent do not apply to the facts of the instant case.

In *Broadway Building Co.* v. *Salafia, supra,* at page 265, the court stated: "*Taft* v. *Dimond,* therefore, is not authority for the proposition that no implied trust inconsistent with the language of a warranty deed can be created by operation of law. An implied trust, i.e., a constructive or resulting trust can be created although an oral express trust fails. Repeatedly conveyances absolute on their face are

held to be conditional." In the same case, at page 265, we said that in order to prevent the use of the statute of frauds as a shield for dishonest or unscrupulous respondents, although the conveyance be absolute on its face, evidence may be permitted to show conduct or oral sayings, or both, which would warrant the creation of a resulting or constructive trust.

It is clear that in the instant case complainant was a woman of advanced years and in poor health and that she placed trust and confidence in her son and his wife for her care and support during the remaining years of her life. It cannot be disputed that a fiduciary relationship existed between these parties. By agreeing to the entry of a decree pro confesso against him, her son admittedly did not live up to the terms of his agreement. It appears from the evidence that domestic entanglements arose between the respondents and it may well be that this situation contributed in some way to the failure of respondent Elvira to perform her part of the agreement. Nevertheless this would not excuse such failure.

As was stated in *Grant* v. *Bell*, 26 R. I. 288, 289: "It is undoubtedly true, as a general rule, that a deed will not be set aside in equity, for breach of a contract, when the party injured has an adequate remedy at law. It is also true that the common grounds for setting aside a deed are fraud, accident, or mistake. * * * On the other hand, it may be said that conveyances of this kind create a continuing obligation on the part of the grantee, in the nature of a trust, for which a remedy at law on the contract is neither adequate nor reasonable. * * * The remedy at law would also involve a multiplicity of suits. * * * Even the remedy in equity by a decree for specific performance might require repeated applications to the court. We think it is much more consonant with the principles of equity to treat this as an implied trust, renounced by the donee, than to treat it as a mere contract."

In our opinion the reasoning of the court in *Grant* v. *Bell, supra,* applies with equal force to the case at bar and the trial justice therefore did not err in granting the relief prayed for. However, we believe that he erred in basing such relief on the theory of a resulting trust. This does not constitute reversible error. It is well established that on an appeal from a decree in equity the question is not whether the reason for the decree given by the trial justice was good or bad, but whether the decree was warranted on the established facts. *McKittrick* v. *Bates,* 47 R. I. 240, 241.

In our opinion the established facts in the case at bar warranted the granting of the relief prayed for on the basis of a constructive trust. As was said in *Rosati* v. *Rossi,* 47 R. I. 493, 494: "Such constructive trust has its origin solely in the application of equitable principles, and is distinct from the oral express trust which the parties, by their agreement, sought to create, but which is unenforceable by reason of the statute of frauds. A constructive trust arising in equity is not affected by the statute of frauds nor the statute of wills. In taking property in such circumstances a grantee, devisee or donee has placed an obligation upon his conscience. If in disregard of that conscientious obligation such grantee, devisee or donee converts the property to his own use he does it in fraud, and it is upon such fraud and not upon his original agreement that equity bases the constructive trust." While the facts in the *Rosati* case differ from those in the case at bar, we believe the principle of law involved is similar and the reasoning of the court is applicable to the facts here.

We have considered respondent Elvira Del Greco's contentions under point VI wherein she argues that certain evidentiary rulings by the trial justice were erroneous on the grounds that they violated the hearsay rule and the provisions of G. L. 1956, §9-17-13, protecting certain privileged communications between husband and wife. Assuming

without deciding that such rulings were in error, said respondent was not prejudiced thereby since there is sufficient evidence, apart from that covered by such rulings, to support the trial justice's findings and the decree based thereon.

The respondent Elvira Del Greco's appeal is denied and dismissed, and the cause is remanded to the superior court with direction to enter a new decree basing it on the theory of a constructive trust in accordance with this opinion.

### ON MOTION FOR REARGUMENT.

#### JULY 3, 1958.

PER CURIAM. After our decision in the above cause the respondent Elvira Del Greco asked leave to file a motion for reargument. Pursuant to this permission she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument of the cause. We have carefully considered those reasons and we are of the opinion that they are not based on any matter which was not fully considered and passed upon directly or indirectly by us in reaching the conclusion stated in our opinion.

The motion is denied and the cause is remanded in accordance with our original opinion.

*Abraham Beacken,* for complainant.

*Isidore Kirshenbaum,* for respondent Elvira Del Greco.