**In re DEXTER BUICK–GMC TRUCK COMPANY, Debtor.**

**Dennis J. ROBERTS II, As Attorney General for the State of Rhode Island, Plaintiff,**

**v.**

**James L. TAFT, Jr., Receiver, Defendant.**

**Bankruptcy No. BK–79–146.**

United States Bankruptcy Court, D. Rhode Island.

Jan. 18, 1980.

Dennis J. Roberts, II, Atty. Gen. for the State of Rhode Island, Providence, R. I., for plaintiff.

Taft, McKenna & McSally, Providence, R. I., for defendant.

## MEMORANDUM OPINION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

This complaint by the Attorney General of the State of Rhode Island asks to have a constructive trust imposed upon cash deposits made by consumers to Debtor automobile agency on undelivered automobiles, and on funds collected by the Debtor for the payment of state sales tax and registration fees due on already purchased vehicles.

In the regular course of its business, Dexter Buick accepted deposits for the purchase of vehicles, together with funds for the payment of Rhode Island Sales Tax and registration fees. In this case, however, the filing of the Petition for an Arrangement on May 9, 1979 terminated certain of these transactions in mid-stream. Automobiles were not delivered to purchasers who had ordered them, and payment was stopped on checks issued for the payment of sales tax. On behalf of those consumers, plaintiff now seeks to recover the funds on the theory that these monies were not part of the Debtor's estate, but were "held in trust" by the Debtor. Plaintiff urges further that the court declare and enforce an "equitable lien" on said funds since the contractual agreement between the debtor and the consumers represents the intention of the parties to set aside such funds.

The plaintiff argues quite forcefully that this Court should "look through the form of the transaction involved to the substance at the heart of the matter." (Plaintiff's Memorandum at P.2) We cannot, unfortunately, alter the legal positions of the parties solely on the basis of where the equities may appear to be in a given situation. The role of a Federal Court in applying trust law is limited to a determination of the law of the state in which it sits, because whether a trust has been established is a matter of state, and not federal law. *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); *In re Faber's, Inc.*, 360 F.Supp. 946, 948 (D.Conn. 1973).

While Rhode Island Courts recognize the equitable remedy of a constructive trust, its use has been rigidly circumscribed. In order to find such a trust, fraud, either actual or constructive, must be established. *State Lumber Co. v. Cuddigan*, 51 R.I. 69, 71, 150 A. 760 (1930). Furthermore, there must be clear and convincing evidence of such fraud in order to give rise to a constructive trust. *Desnoyers v. Metropolitan Life Ins. Co.*, 108 R.I. 100, 112, 272 A.2d 683 (1971). The essential distinction between an express trust, either oral or written, and a constructive trust is that the basis of a constructive trust is fraud, and not the original agreement of the parties. *Del Greco v. Del Greco*, 87 R.I. 435, 443, 142 A.2d 714 (1958).

The Attorney General has failed to cite, nor can we find through independent research, any decision suggesting that a Rhode Island Court could find a constructive trust on the facts presented in this case. There is no evidence that the transactions in question were based on fraud, actual or constructive. Indeed, the Defendant's Memorandum indicates that the Debtor continued to place orders for new automobiles, remitted sales tax payments to the Rhode Island Division of Taxation, and generally attempted to fulfill its contractual obligations to the consumer-creditors who had money on deposit. (Defendant's Memorandum at P.5). It was the filing of the Petition for an Arrangement that caused the conclusion of these transactions to be frustrated.

The Attorney General argues that the advance of funds by the consumer-creditors to the Debtor "represents an intention of the parties" to be set aside such funds for the purchasing of new cars, and thus "entitles the consumers to an equitable lien" since they were held "in trust." (Plaintiff's Memorandum at P.2). It is upon fraud, however, and not the intention of the parties that a constructive trust must rest. The establishment of such a trust

"has its origin solely in the application of equitable principles, and is distinct from the oral express trust . . . it is

upon . . . *fraud* and not upon his original agreement that equity bases the constructive trust." (emphasis added). *Del Greco v. Del Greco, supra* at 443, 142 A.2d at 718, quoting *Rosati v. Rossi,* 47 R.I. 493, 494, 134 A. 18 (1926) (emphasis supplied). Assuming, as plaintiff contends, that the agreement between the consumer-creditors and the Debtor represented an intention to set aside the deposit funds, no constructive trust can be established unless fraud is proved by clear and convincing evidence. *Desnoyers v. Metropolitan Life Ins. Co., supra,* 108 R.I. at 112, 272 A.2d 683; *State Lumber Co. v. Cuddigan, supra,* 51 R.I. at 71, 150 A. 760. The Plaintiff does not argue, and the facts here would not support the contention that the Debtor fraudulently induced the consumer-creditors to advance the funds in issue. Therefore, no constructive trust can be established.

Neither is there evidence to indicate that the agreement between the consumer-creditors and the Debtor could give rise to an express trust. Such a trust may be expressly created and clearly established by proof that the parties' intention was to establish a trust relationship. *Desnoyers v. Metropolitan Life Ins. Co., supra,* 108 R.I. at 108, 272 A.2d 683. There is no requirement in the agreement between the consumer-creditors and the Debtor that the Debtor segregate the deposits received. Indeed, the facts indicate that quite the opposite occurred. As the Attorney General alleges in his complaint, the monies received by the Debtor were placed in a general account at the Newport National Bank where they were commingled with the Debtor's other funds. This is quite different from *In re Brunswick Agency, Inc. v. James L. Taft, Jr., Receiver* where an express trust was established, the funds were traced, and its purpose carried out during the short duration of its operation.

While we are sympathetic to the plight of the consumer-creditors in the present case, we are bound to follow settled law. As the Court stated in *In re Faber's, Inc.,* 360 F.Supp. 946, 948 (D.Conn.1973) when faced with a similar claim by consumers against a bankrupt carpet dealer,

". . . consumers do not think of themselves as creditors . . . and their ignorance of the law prevents them from taking legal measures to guard their interests. Unlike businessmen to whom the cost of such protection and the risk of loss in its absence are matters of basic and constant concern, consumers are unable to protect themselves from either the dishonesty or the insolvency of the seller . . . [E]ven acceptance of the justice of their argument would not advance their cause, for the federal courts are without power to provide a remedy in this situation." (citations omitted)

For the reasons stated above, Plaintiff's complaint is denied. Judgment for the defendant shall be entered in accordance with the terms of this decision within ten (10) days.