LODOVINA BOIANI *vs.* RAY B. WILSON, JR., and W. M. PETTEY.

APRIL 22, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)   Execution Sales.   Adjournment.   Notice.*

While Gen. Laws, 1923, cap. 355, sec. 13, provides that the officer charged with the service of an execution may for good cause adjourn the sale giving one week's notice by publication in a newspaper in a prescribed manner; the action of a sheriff in postponing a sale from 11.30 to 12 o'clock for the benefit of the defendant, although called by the sheriff an adjournment, and so treated by him in his deed, and records, was in the circumstances not such an adjournment as required another advertisement, but a temporary suspension of the sale, from which she suffered no injury and did not invalidate the sale.

*(2)   Execution Sales.   Adequacy of Consideration.*

While inadequacy of price alone is not a sufficient reason to set aside an execution sale, gross inadequacy of price is an important consideration in combination with other circumstances in determining whether there has been a fair sale.

*(3)   Execution Sales.   Inadequacy of Price.*

Upon the facts of case the court finds an execution sale was not a fair one and should be set aside.

*(4)   Execution Sale.   Notice.   Adjournment.*

*Semble:* that where through inadequacy of notice of execution sale, the attendance at sale was small, the sheriff might properly adjourn sale to another day as he could not sell the property except at a great sacrifice.

BILL IN EQUITY.   Heard on appeal of complainant and sustained and decree reversed.

STEARNS, J. This is a bill in equity to set aside an execution sale. The cause is here on appeal from a final decree of the Superior Court declaring the sale to be valid. and dismissing the bill of complaint. In 1924, at the time of the hearing in the Superior Court, complainant, a married woman of foreign birth, was thirty-four years old; she was unable to read. Her husband, forty years of age, was sick and had returned to Italy.

Complainant owned a six apartment brick house, built in 1921, at a cost of $43,000, situated on Broadway near the business center of Newport. There were two mortgages on the property aggregating $16,000 held by the Savings Bank of Newport; also three attachments of creditors recorded May 25, 1921, in the following order: (1) Hyman Cherlin attachment; in this case there was a judgment May 16, 1922, for $300 and costs of $46.20; (2) Island Lumber Co. attachment on writ with *ad damnum* of $10,000; (3) Ray B. Wilson attachment on writ with *ad damnum* of $10,000. (4) An attachment of Israel Smith, recorded August 29, 1921, and judgment rendered thereon December 12, 1922, for $50 and costs. The respondent Pettey is the assignee of the Island Lumber Co. and the owner of its claim. The firm of Burdick & McLeod of Newport are the counsel for all of the attaching creditors.

On trial of the Island Lumber Co. case a verdict for the defendant (the complainant Lodovina Boiani) was directed by the court and the case is now in this court on bill of exceptions. The case of the respondent Wilson has never been tried. The Cherlin execution sale was advertised to be held March 7, 1923. There were several adjournments of the sale, the last one being to July 14, 1923. The Smith execution sale was advertised to be held May 14, 1923, and was later adjourned to June 14, 1923, at 11:30 a.m. On this latter date at 11:30 a.m. there were present at the proposed sale the deputy sheriff, Mr. Peckham, who was a member of the firm of Burdick & MacLeod, and Mr. Murphy, a local attorney not connected with any of the litigation. As

Mrs. Boiani was not present, at the request of Mr. Peckham, the sale was formally adjourned by the sheriff until 12 o'clock noon to give her an opportunity to attend if by any chance she had forgotten the hour. Although she lived near the court house where the sale was to be held, no attempt was made to communicate with her. At 12 o'clock, the same persons only being present, after the conditions of sale were again read, one bid was made by Mr. Murphy and a higher bid for $96 was made by Mr. Peckham; there being no other bids the property was sold for $96., 40% cash, balance on delivery of the deed. By direction of Mr. Peckham the sheriff's deed was made to the respondents, Pettey and Wilson, and was delivered June 30, 1923, on payment of the balance. Shortly thereafter complainant discovered that her property had been sold and she at once began proceedings to set aside the sale. She claims that there was an agreement with counsel for Smith to accept partial payments on the Smith execution, which was not kept. The Cherlin claim was in charge of Mr. Corcoran, a member of the same firm of lawyers. Prior to the first advertised date of sale on this claim (April 17, 1923), complainant's attorney wrote to Burdick & MacLeod and stated that, as the Savings' Bank had threatened to foreclose on the mortgage unless interest then overdue was paid by April 1, complainant could not make the payment she had promised on the execution and asked for time and promised complainant would pay after she had collected her rents in May. On April 6, complainant went to the office of Burdick & MacLeod, and Mr. Corcoran, on receipt of her check for $50, agreed to continue the Cherlin sale. Another payment by check of $150 was made to Mr. Corcoran May 4, which with a check of March 1 for $50 made a total of $300. No receipts were given for any of these payments. Complainant supposed, and not without some reason, that the payments were to be credited in such manner as to secure a delay of both sales.

May 28, 1923, Mr. Peckham by letter to complainant stated that her property would be sold on the Smith execu-

tion at 11:30 a. m., June 14, and that no further continuance of the sale could be made. Plaintiff was unable to read the letter but from the appearance of the envelope understood it was from the attorneys. She went to their office with a check for $50 which she gave to Mr. Corcoran on the Cherlin execution and requested that the Smith sale be continued. Mr. Corcoran returned the check and advised her to use it in payment of the Smith claim. Complainant says he agreed to see Mr. Peckham and let her know if the Smith sale would be postponed. She received no further notice from either of the attorneys and the property was sold under the Smith execution. The good faith of the attorneys and of the sheriff who made the sale is not questioned. But as a result of the individual method of the law firm in handling these executions, their acceptance of partial payments and the continued leniency of the attorneys in enforcing the judgments and in view of the ignorance and lack of business experience of complainant, we are satisfied that complainant was in fact misled in regard to this sale, otherwise it is not likely that she would have failed by some means to raise the small amount of money needed to satisfy the Smith judgment, or that she would have been unrepresented at the sale. She was trying to pay her indebtedness and had succeeded in paying a considerable part of it and relied on the continued forbearance of the execution creditors.

Mr. Smith testified that his case had been entrusted to Mr. MacLeod, another member of the law firm, that he was not urging the sale and knew nothing about it until long after the sale. The inference is not unfounded that one reason and perhaps the principal one for pressing the Smith sale was to secure an advantage to the respondents for their claims. This was not unlawful; but, if the supposition is correct, the respondents now have no strong claim for the aid of a court of equity to enable them to retain the property. It is claimed that the sale was void because being an adjourned sale the adjournment was not advertised according to law. General Laws, Chapter 355, Section 13,

provides that the officer charged with the service of an execution may for good cause adjourn the sale by giving one week's notice by publication in a newspaper in a prescribed manner. The action of the sheriff in postponing the sale until 12 o'clock noon, although called by the sheriff an adjournment and so treated by him in his deed and records, was in the circumstances not such an adjournment as required another advertisement. In reality it was but a temporary suspension of the sale, intended for the benefit of complainant from which she suffered no injury and did not invalidate the sale.

(2)  It is claimed that the price for which the property was sold was grossly inadequate.

The question of the fair value of this property is not easy to determine. The assessed valuation in June, 1923, was $21,900. The valuation by experts ranged between $20,000 and $35,000. The monthly rental of the apartments, when all were rented, was $375. Respondents claimed that the actual monthly rental at the time of the sale was only $185. After deducting all charges for mortgages, taxes, interest and making an allowance for the curtesy interest it is probable that complainant's interest in the property was worth several thousand dollars. The value of the liens of respondents' attachments was best known to their attorney and the delay in pressing these claims to judgment is perhaps some indication of their limited value. The sheriff testified that he did not consider $96 a fair price and if he had thought the property was to be sold for that price he would have advanced the money for complainant and not had the property sold.

The advertisement of sale was published in a newspaper of limited circulation with the laudable intention of preventing unnecessary publicity of complainant's financial embarassment, as the sheriff did not think the property would actually go to a sale. The result, however, was detrimental to complainant, as evidenced by the small attendance at the sale. In the circumstances the sheriff

might properly have adjourned the sale to another day as he could not sell the property except at a great sacrifice. *Reynolds* v. *Hoxsie,* 6 R. I. 463; *Aldrich* v. *Grimes,* 14 R. I. 219; G. L. 1923, C. 355, s. 13.

We think the price was grossly inadequate; in fact, it was less than one-half of a single month's rental. Inadequacy of price alone however is not a sufficient reason to set aside the sale. *Galvin* v. *Newton,* 19 R. I. 176; *Babcock* v. *Wells,* 25 R. I. 30; *Beacon Hill Land Co.* v. *Bowen,* 33 R. I. 404. But a gross inadequacy of price is an important consideration in combination with other circumstances in determining whether there has been a fair sale. *Aldrich* v. *Wilcox,* 10 R. I. 405. In our judgment, in view of all the circumstances this was not a fair sale, consequently it was invalid and should be set aside.

A preliminary injunction restraining respondents from enforcing any of their rights under this sale was granted July 16, 1923, on condition that complainant pay to the respondents without prejudice to the rights of either of the parties the judgment and costs in the Cherlin suit, overdue taxes, interest on the mortgages and certain other charges in connection with the property to the amount of $1,163.20. This sum the complainant paid. Later a receiver of the property was appointed by the court to collect the rents and manage the property, with authority to issue receiver's notes to an amount not exceeding $1,900, to pay taxes, mortgage interest, etc., said notes to be a lien on the property.

The final decree was silent in regard to all these payments and in that respect was incomplete. An accounting must be had from the receiver in the Superior Court.

Complainant's appeal is sustained. The decree appealed from is reversed.

The parties may on May 3, 1926, at the opening of court present a form of decree in accordance with our opinion.

*Pettine, Godfrey & Cambio,* for complainant.
*Burdick & MacLeod,* for respondents.