Roy P. BRIEHLER et al.

v.

POSEIDON VENTURE, INC. et al.

No. 84–188–Appeal.

Supreme Court of Rhode Island.

Jan. 7, 1986.

Michael Kiselica, Warwick, for plaintiffs.

William Landry, Jerry L. McIntyre, Edwards & Angell, Providence, for Poseidon Venture.

John E. Graham, 3rd, Charleson & Brill, Providence, for Sylvia's Inc.

## OPINION

KELLEHER, Justice.

This Superior Court civil action represents a challenge to a constable's sale of a ferryboat to the defendants, William Burgin (Burgin) and Jerry McIntyre, who shortly after the sale sold the vessel to Poseidon Venture, Inc. The trial justice rejected the challenge and dismissed the suit. Although there are three named plaintiffs, the real party in interest is Roy P. Briehler (Briehler).

In 1971 Briehler purchased from the federal government as surplus property a decommissioned ferryboat known as *The Narrows* for just over $11,000. He had the boat towed to the town of Jamestown and later entered into a twenty-five-year lease with the town for what had been the Newport-Jamestown ferry slip. The rental was a dollar a year. Briehler renovated the vessel, transforming it into a summer-season dockside restaurant/motel. Seven years later Burgin formulated and submitted to the Jamestown Town Council a redevelopment project that called for the relocation of the ferryboat and the construction of a marina that could serve between thirty and fifty boats. Briehler was opposed to the project.

Time marched on, and in 1982 Briehler was sued in the Newport County Court by a fuel-oil dealer for oil delivered to the

ferry and repair services performed on Briehler's automobile. Judgment was entered in the Second Division District Court against Briehler for $602.61 plus interest and costs. Briehler failed to take a timely appeal to the Superior Court. Thereafter, execution issued, and on February 26, 1983, the constable's sale that is now being challenged took place. There were two bids: one by the fuel-oil dealer, who offered the amount of the judgment, the other by the successful bidder, Burgin, who offered the amount due Briehler's creditor plus a penny.

Although Briehler has put forth a plethora of reasons why the constable's sale should be vacated, only two of his contentions merit any discussion. They are the inadequacy of the successful bid and the constable's failure at the time of the sale to "expose" the goods to any potential purchaser.[1] Beauty is in the eye of the beholder, and obviously Briehler considered the ferry to be something akin to a floating palace, whereas Burgin stressed that by 1983 the boat, which had never left the dock after it first arrived at the ferry slip in 1971, had become a rotted shell housing a "greasy-spoon" type of restaurant concession and a few "abysmal" motel rooms.

Briehler was involved in other litigation in the Federal District Court for the District of Rhode Island for work performed by a shipyard on another boat he owned. That litigation was resolved when Briehler gave to the shipyard a security interest in the ferryboat for an unliquidated amount.

■ This court has consistently ruled that mere inadequacy of price, in and of itself, is not sufficient to set aside a sheriff's or constable's sale. *Smith v. Adelman,* 69 R.I. 211, 214, 32 A.2d 617, 618

(1943); *Bowker v. Semple,* 51 R.I. 142, 145, 152 A. 604, 605 (1930); *Boiani v. Wilson,* 47 R.I. 317, 322, 132 A. 881, 883 (1926); *see also* Annot., 5 A.L.R.4th 786 (1981). Before the turn of the century, the court in *Aldrich v. Wilcox,* 10 R.I. 405, 409 (1873),[2] acknowledged that gross inadequacy of price such as would shock one's moral sense would be a ground for setting aside a sale like the one now under review.

Experts who testified in this case gave estimates of the value of the ferryboat that ranged anywhere from $15,000 to $1,100,-000. The trial justice determined that the vessel had a value of $75,000 on the date of the sale. However, he was of the belief that the sale price of $931 was not outrageously or grossly inadequate because at the time of the sale there was an outstanding lien of an unliquidated amount that, in the trial justice's words, might have been "$10, * * * $100, or * * * several tens of thousands of dollars."

■ Findings of fact made by a trial justice sitting without a jury will be accorded great weight and will not be overturned unless the trial justice either overlooked or misconceived material evidence or was otherwise clearly wrong. *Harbor Marine Corp. v. Briehler,* — R.I. —, —, 459 A.2d 489, 492 (1983). On this record we are not persuaded that the trial justice committed error when he refused to find that the price paid at the auction was grossly inadequate.

The constable, in conducting the sale, was bound by the terms of G.L.1956 (1969 Reenactment) § 9–26–12, which provide that the goods or chattels attached shall be kept in the presence of the officer, and their sale shall be advertised at least ten

---

1. In his announcement of sale, the constable stated that he was levying all right, title, and interest that defendant then had in and to the ferryboat and "the goods, chattels, equipment, and other personal property located thereon or therein."

2. *Boiani v. Wilson,* 47 R.I. 317, 322, 132 A. 881, 883 (1926), seems to say that gross disparity, in and of itself, is not grounds for invalidating a

sale and cites *Aldrich v. Wilcox,* 10 R.I. 405 (1873), in support of that proposition. However, a close reading of *Aldrich* indicates that the court did rule that an inadequacy that would shock one's moral sense would, in and of itself, be grounds for vacating a sheriff's sale, and an inadequate price, coupled with irregularities, could be subject to reversal. *See id.* at 409.

days before they shall be "exposed" and offered for sale, in order to give the person who owns such goods or chattels the opportunity to pay the money due together with accrued costs and interest. It is undisputed that the constable did not expose the goods prior to the sale.

 Inadequacy of price, then, when taken into consideration with other circumstances or irregularities surrounding the sale, might justify setting it aside. Here, Briehler argues that the inadequate price, when coupled with the failure to expose the goods, justifies an invalidation of the constable's sale. It is conceded that the ferryboat was not open for inspection so that people could board it and inspect its quarters. However, we believe that if Briehler is to prevail on the lack of exposure, it was incumbent upon him to show that this irregularity affected the price received by the constable.

Exposure of goods allows a prospective bidder to see and examine what is being offered for sale. Pictures of the interior of the vessel taken after the sale when Burgin and McIntyre went aboard *The Narrows* were introduced into evidence. In dismissing Briehler's suit, the trial justice accepted defendants' description of the vessel's interior as "filthy," "dirty," "a mess," and in a "state of disrepair." A survey of the vessel made in March of 1983 indicated that housekeeping of the below-deck areas was poor with no effort being made to maintain watertight integrity.

The trial justice rejected testimony by a friend of Briehler's who served as a jack of all trades on the ferryboat, including that of a chambermaid. This witness sought to show that had the contents of the vessel been exposed, a prospective buyer could have seen that there was much valuable material on board, resulting in a higher bid, since her inventory indicated the presence of such materials as dacron line, 500 gallons of asphalt, 40 Tiffany hanging lamps, and hundreds of pieces of china, including bowls, cups, and saucers. It is obvious that the trial justice was of the belief that exposure would add nothing to the sale, and we share such a belief. Consequently, we cannot fault the trial justice's dismissal of Briehler's suit.

Briehler's appeal is denied and dismissed, and the judgment appealed from is affirmed.

BEVILACQUA, C.J., did not participate.