**FIRESTONE TIRE AND RUBBER CO.,**
Defendant Below, Appellant,

v.

**Robert ADAMS and Ethel Mae Adams,**
Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted: Jan. 19, 1988.
Decided: May 18, 1988.

---

Harry H. Rhodes, III, of Brown, Sheils & Chasanov, Dover, Patricia A. Mattern, of Rawle & Henderson, Philadelphia, Pa., and Harvey M. Grossman (argued), of Grossman and Kato, Los Angeles, Cal., for appellant.

Douglas B. Catts (argued), and Kevin M. Howard, of Schmittinger & Rodriguez, P.A., Dover, for appellees.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

CHRISTIE, Chief Justice:

In this case, Firestone Tire and Rubber Company (Firestone), appeals from the entry of judgment in the Superior Court which was based on a jury verdict awarding $747,598.94 in damages to the appellees, Robert Adams and Ethel Mae Adams, his wife, (Adams) for personal injuries suffered by Mr. Adams and for loss of consortium suffered by Mrs. Adams.

The following facts are not disputed by the parties. Mr. Adams' injuries resulted from a single vehicle truck accident which occurred on July 30, 1980 near Hallwood, Virginia. At the time of the accident, Mr. Adams was driving a truck consisting of a truck tractor which he recently purchased and a trailer which Mr. Adams did not own but was hauling on behalf of a trucking company. Mounted on the right front of Mr. Adams' truck tractor was a tire manufactured by Firestone. It was this tire that blew out causing the truck to leave the roadway and go into a ditch. The parties, however, did not agree as to the cause of the tire failure or the nature and extent of Mr. Adams' injuries.

Mr. Adams alleged that a mismatch of the tire's multi-piece rim assembly caused the blowout. He presented expert testimony that parts of the tire identified as the side ring and base of the rim did not fit together precisely and that this misfit caused enough stress on the sidewall of the tire to result in the blowout. Firestone, on the other hand, presented evidence that the rim assembly and its locking mechanism did fit together sufficiently and that all of the parts of the assembly remained fully engaged at all times. Firestone offered expert testimony that the cause of the blowout was not the mismatch, but rather it may have been caused by running the tire when it was flat or near-flat. This, in turn, might have caused the tire to become overheated and resulted in extensive internal damage. Firestone's expert was of the opinion that the tire thus weakened and damaged should have been discarded but that instead it was fitted with a different tube, mounted on the truck, and shortly thereafter it ruptured causing the accident through no fault of the manufacturer.

Mr. Adams presented medical evidence that he incurred severe injuries including: a fractured skull; retrograde amnesia; permanent brain damage; and speech, language, and motor impairments. Mr. Adams maintained that as a result of the accident, he suffered an overall permanent disability of 20 to 40% of function. Firestone, at trial, disputed the evidence presented as to the nature and extent of Mr. Adams' injuries but does not raise this issue on appeal.

Firestone centers its appeal on the contention that the trial court abused its discretion during the trial when it permitted Adams to:

(a) make pervasive use of inflammatory and prejudicial evidence unrelated to the issues;

(b) use depositions from other cases without satisfying conditions essential to such use;

(c) proceed on a failure to warn theory which was not supported by the law or the evidence.

In support of its contentions, Firestone argues that the trial court abused its discretion when it made numerous evidentiary rulings. Many of the evidentiary rulings cited by Firestone will be separately addressed after brief mention of the basic approach the Delaware courts take to evidentiary rulings under the Delaware Rules of Evidence.

Delaware Rule of Evidence 402 states that "all relevant evidence is admissible." Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Speaking generally, relevancy is determined by examining the purpose for which evidence is offered." *Register v. Wilmington Medical Ctr., Inc.*, Del.Supr., 377 A.2d 8, 10 (1977). However, Rule 403 provides that even if the evidence is relevant it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury...."

■ The determination of whether proffered evidence is relevant is within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *Lampkins v. State*, Del.Supr., 465 A.2d 785, 790 (1983). Also within the discretion of the trial court are determinations of whether or not the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice to the opposing party. *Williams v. State*, Del.Supr., 494 A.2d 1237, 1241 (1985); *see also* D.R.E. 401, 402, 403. Judicial discretion is the exercise of judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of the circumstances and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused. *Chavin v. Cope*, Del.Supr., 243 A.2d 694, 695 (1968); *Larrimore v. Homeopathic Hospital Ass'n of Del.*, Del.Supr., 181 A.2d 573,

578 (1962); *Pitts v. White*, Del.Supr., 109 A.2d 786, 788 (1954).

This Court recently held that when

... the appeal is grounded on allegations that the trial court erred as a matter of law or abused its discretion in submitting claims to the jury and in admitting certain evidence, the reviewing court will first consider whether the specific rulings at issue were correct. If the court finds error or abuse of discretion in the rulings, it must then determine whether the mistakes constituted significant prejudice so as to have denied the appellant a fair trial.

*Strauss v. Biggs*, Del.Supr., 525 A.2d 992, 997 (1987). Our review of this case then will begin with a determination of whether or not the trial court abused its discretion in admitting the evidence in question. If this Court finds that any evidence was improperly admitted, then we must determine whether Firestone suffered significant prejudice so as to have been denied a fair trial.

■ Firestone's first major contention is that the trial court abused its discretion by permitting Adams to make pervasive use of inflammatory and prejudicial evidence unrelated to the issues. Firestone specifically complains that over its objection, the trial court admitted into evidence letters, a memorandum, admissions, and documents (Plaintiffs' Exhibits 58, 59, 61, 63, 64, 70, 71, and 72) all of which were extraneous to issues in the present case as they referred to rim separation incidents. Firestone argues that the admission of these exhibits was improper because no rim separation occurred in this case, and the Firestone products at issue here were not involved in the rim separation incidents described in the exhibits.

Adams argues that the evidence was properly admitted because the exhibits were not offered to prove the cause of his accident but rather to show knowledge on the part of Firestone. Adams maintains that the exhibits established Firestone's knowledge of: the dangerous nature of multi-piece rim components, the likelihood that multi-piece rim components would be

mismatched, and the duty to warn others of this danger.

The record shows that Adams offered the exhibits for the purpose of showing Firestone's knowledge of the dangerous nature of its product, the propensity for mismatch, and the need to warn others of this danger. Firestone disputed the relevancy of the exhibits and argued that the unfair prejudice to Firestone substantially outweighed their possible probative value.

The trial court after considering the proffered evidence, the relevant rules of law, and counsels' arguments as to both issues ruled that the evidence was admissible for the purpose for which it was offered. We find no abuse of discretion in these rulings.

■ Firestone next complains that the trial court impermissibly allowed Adams to present evidence indicating that sometime after the manufacture of the rim components in question, Firestone explored the possibility of on-product warnings premised on the danger of rim separation (Plaintiffs' Exhibits 59, 66, 67, and 68). The trial court permitted evidence as to on-product warnings but then granted Firestone's motion for a directed verdict as to this issue and gave a jury instruction on this point after inviting Firestone to draft the proposed language for the instruction. The jury instruction given by the court stated that "as a matter of law there is no evidence in this case of any causation between the lack of warning label on the wheel components and the accident; therefore, you must disregard any such evidence which you have heard."

Even though the trial court granted Firestone's motion for a directed verdict as to on-product warnings, this determination does not necessarily lead to the conclusion that evidence on this point was improperly admitted. The trial court specifically found that the evidence was relevant for the purpose of establishing feasibility of on-product warnings and, therefore, it was admissible. D.R.E. 402, 407. In addition, Firestone's counsel pointed out at trial, that the judge "... could not make his ruling until the end of the plaintiffs' case ..." therefore, the evidence was admitted because the judge "... didn't know what the evidence would ultimately show." We find no abuse of discretion in the trial court's decision on this matter.

After granting the motion for a directed verdict, the trial court denied Firestone's motion for a mistrial based on the admission of this same evidence. We find no error or abuse of discretion in this ruling.

■ Firestone contends that evidence introduced by Adams which referred to a "recall regarding tube type wheels" was irrelevant and, therefore, improperly admitted. (Plaintiffs' Exhibit 60). The trial court specifically found that the evidence was relevant and, in fact, Firestone's counsel seemed to indicate its relevancy when she stated that "generally speaking" tube-type wheels involve multi-piece rims which were, of course, at issue in this trial. The trial court did not abuse its discretion in admitting this evidence.

■ Firestone asserts that the trial court erred when it allowed counsel for Adams to read from a letter written by Firestone's in-house counsel (Plaintiffs' Exhibit 62). The letter referred to a lawsuit stemming from a rim component separation accident involving a mismatch of the rim components. In its brief, Firestone maintains that this evidence was "clearly irrelevant" and to support this point quotes a portion of what was read to the jury. However, Firestone fails to mention the sentence immediately preceding the quoted portion which was also read to the jury. This sentence stated that, "(n)otwithstanding the fact that for all practical purposes the then state of the art permitted rims to be designed in accord with a single basic design principle, and *accordingly virtually all multipiece rims are susceptible of mismatch....*" (Emphasis added). This sentence indicates the relevancy of this evidence and supports the trial court's ruling that the evidence was admissible. D.R.E. 402. The trial court did not abuse its discretion in admitting this evidence.

■ Firestone argues that it was improper for the trial court to allow Adams to introduce evidence speculating as to wheth-

er the unknown tire mechanic who installed the tire with the mismatched rim components was aware of the dangers which could result from such a mismatch. Counsel for Firestone does not specifically identify this evidence but apparently he is referring to statements as to *tire mechanics in general* which were contained in portions of depositions read by Adams' counsel at trial. Firestone claims that "plaintiffs' exploitation of this nonissue was unfair, confusing and improper" but Firestone fails to point to any portion of the trial transcript where Adams' counsel mentioned the state of mind of the unknown *tire mechanic in this case.* Firestone seems to complain of evidence which was not presented by Adams.

The trial court in its instructions to the jury clearly stated that:

> ... there is no evidence concerning the identity of the person who mounted the tire and wheel components. Accordingly, you can not speculate about this person ... thus, with regard to Plaintiff's allegation that Firestone should have warned, you may consider only Plaintiff's assertions that Firestone should have warned Mr. Adams. You cannot consider any warnings with regard to mismatches directed to the tire changer.

The trial court did not abuse its discretion as to this issue.

Firestone asserts that the cumulative affect of "the court's error in permitting plaintiffs to use extraneous documents and deposition testimony to confuse and inflame the jury proved highly prejudicial to Firestone." In order to prevail on this argument, Firestone must show that the trial court abused its discretion in making any of the evidentiary rulings cited by Firestone *and* that the cumulative effect of the abuses of discretion resulted in significant prejudice so as to have denied Firestone a fair trial. *Strauss v. Biggs*, Del.Supr., 525 A.2d 992, 997 (1987). Since we have found no errors or abuses of discretion it follows that Firestone was not prejudiced or denied a fair trial. Firestone has not been successful in its attempt to show that Adams benefitted from an "unfair boost" due to "improperly received evidence and its exploitation by plaintiff's counsel." Since we have ruled that the trial court did not abuse its discretion in making its evidentiary rulings, this Court will affirm the decisions of the trial court as to these issues.

■ Firestone's second major contention is that the trial court impermissibly allowed the appellees to use depositions and trial testimony from other cases without satisfying conditions essential to such use. Firestone argues that since the depositions and trial testimony at issue were not taken in or for this case, D.R.E. 804 governs admissibility of the depositions and all other testimony introduced under the former testimony exception to the hearsay rule. *See also* D.R.E. 801 and 802. The deponents were all former employees of Firestone at the time of the trial of this case, but they were employed by Firestone when their testimony was taken.

The thrust of Firestone's argument is two-fold: 1) the plaintiffs did not meet their burden in showing that the declarants were "unavailable" as that word is defined by D.R.E. 804(a)(5); 2) the plaintiffs failed to show that the party against whom the testimony was offered (Firestone) had had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination when the testimony was originally taken as required by D.R.E. 804 (b)(1).

This Court has stated that a determination of whether the witness is unavailable rests within the sound discretion of the trial court. *Younger v. State*, Del.Supr., 496 A.2d 546, 551 (1985). In this case, the record reveals that after hearing arguments from counsel, the court found that the declarants were unavailable and that it would have put form over substance "... to have asked plaintiffs to attempt to contact those people where it is highly unlikely they would have voluntarily appeared and they were beyond subpoena power of the court." We agree with the trial court's determination. *State Highway Dept. v. Buzzuto*, Del.Supr., 264 A.2d 347 (1970).

The record also indicates that the trial court heard arguments from counsel as to

whether each portion of every deposition offered by the plaintiffs met the "opportunity and similar motive" requirement of D.R.E. 804(b)(1). Only after careful analysis did the trial court admit into evidence those portions of the proffered testimony as to which it found that Firestone had had an "opportunity and similar motive to develop the testimony." We conclude that the trial court did not abuse its discretion, and we, therefore, will affirm the decisions of the trial court as to this issue.

Firestone's remaining two points will be considered together. Firestone contends that the trial court erred in permitting the plaintiffs to proceed on a warning theory of recovery which was not supported by the law or the evidence and, therefore, the trial court also erred in denying Firestone's motion for a directed verdict on this issue. The parties agreed that the law of Virginia, the situs of the accident, is controlling as to whether Firestone had a duty to warn Adams.

Firestone's contention that the "claimed duty to warn was nonexistent as a matter of law" ignores relevant Virginia case law. The Virginia Supreme Court has recognized that a manufacturer of a chattel will be subject to liability for failure to warn when the manufacturer:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous conditions; and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Featherall v. Firestone Tire and Rubber Co.*, 291 Va. 949, 252 S.E.2d 358, 366 (1979); *see also* Restatement (Second) of Torts § 388 (1965).

In the *Featherall* case, the Virginia Supreme Court stated that "the duty to warn stems from the view that the manufacturer should have superior knowledge of his product and it extends not only to the im-

mediate purchaser but to other persons who might in the ordinary and natural course of events be subjected to the danger." *Featherall v. Firestone Tire and Rubber Co.*, 252 S.E.2d at 366. We find that Virginia law recognizes that a manufacturer may be held liable for breach of a duty to warn of the dangers of its products, and that Firestone's argument on this issue is without merit. *See also Oman v. Johns–Manville Corp.*, 4th Cir., 764 F.2d 224 (1985); *Jones v. Meat Packers Equipment Co.*, 4th Cir., 723 F.2d 370 (1983).

Firestone also argues that "the plaintiffs failed to prove that the failure to warn was a proximate cause of Adams' accident." Firestone pursues this argument despite the fact that the trial court in denying Firestone's motion for a directed verdict, ruled that the plaintiffs had made out a *prima facie* case both as to "defective design based on capability of mismatch" and that "but for the defendant's failure to warn the ultimate consumer [Adams] consistent with the restatement of formulation that this incident would not have occurred." Having found that plaintiffs had presented a *prima facie* case as to these issues, the trial court presented the issues to the jury.

These issues were properly submitted to the jury as "... proximate cause is ordinarily a factual issue for resolution by a jury. The issue becomes one of law, to be decided by a court only when reasonable minds could not differ concerning the conclusion to be drawn from the evidence." *Virginia and Maryland R.R. Co. v. White*, 228 Va. 140, 319 S.Ed.2d 755, 758 (1984). *See also Eustice v. Rupert*, Del.Supr., 460 A.2d 507 (1983). The jury in this case specifically found that Firestone was negligent in failing to warn Adams and that such negligence was a proximate cause of his injury. A review of the record shows that substantial evidence exists to support the jury's verdict. This Court, therefore, will affirm the judgment of the trial court as to these issues. *Sussex Poultry Co. v. American Ins. Co.*, Del.Supr., 301 A.2d 281 (1973); *Haveg Corp. v. Guyer*, Del.Supr., 226 A.2d 231 (1967).

The judgment of Superior Court is AFFIRMED.