David H. DEIBLER and Carrie J. Deibler, Defendants Below, Appellants,

v.

ATLANTIC PROPERTIES GROUP, INC., a corporation of the State of Delaware and the Olde Dinner Bell Inn, Inc., a corporation of the State of Delaware, Plaintiffs Below, Appellees.

No. 42, 1994.

Supreme Court of Delaware.

Submitted: Nov. 29, 1994.

Decided: Jan. 11, 1995.

Rehearing Denied Feb. 10, 1995.

Henry A. Heiman, Heiman, Aber & Goldlust, Wilmington, for appellants.

George F. Gardner, III, Parkowski, Noble & Guerke, Dover, for appellees.

Before VEASEY, C.J., WALSH, J., and ALLEN, Chancellor.*

ALLEN, Chancellor.

This appeal is from an order of the Superior Court issuing a writ of possession to appellee Atlantic Properties Group, Inc. ("Atlantic"). The real property in question is operated as the Olde Dinner Bell Inn in Rehoboth Beach Delaware; it constitutes substantially all of the assets of a Delaware corporation, The Olde Dinner Bell Inn, Inc. ("Dinner Bell, Inc."). Atlantic's right to the writ of possession arises from its purchase at a 1993 sheriff's sale of all of the issued and outstanding shares of capital stock of Dinner Bell, Inc. The sheriff's sale was ordered as part of the execution of a judgment obtained by the law firm Prickett, Jones, Elliott, Kristol & Schnee (the "Prickett Firm") against that firm's former clients, David H. and Carrie J. Deibler (the "Deiblers"), who had owned all of the outstanding capital stock of that corporation and two others. At the sale itself an exceedingly small amount was obtained when the true value of the property in issue is considered. Nevertheless, after taking evidence at a contested hearing, the Superior Court confirmed the sale and enforced it by issuing the writ of possession.

The Deiblers have appealed the granting of the writ, asserting that the sheriff's sale process was fatally defective in several respects. Moreover they claim that the amount realized by the sale was itself such as to compel the conclusion that the Superior Court abused its discretion in failing to require that the property go through another sale process. For the reasons set forth below, we conclude that the sale process fully complied with the requirements of law and that, in all events, the Deiblers have no standing to complain about the amount realized from the sale, as they deliberately attempted to subvert the judicial process and that attempt contributed to the outcome of the sale. We thus affirm the judgment of the Superior Court.

I.

For purposes of this appeal a brief outline of the facts will suffice. In November 1992 the Prickett firm obtained a judgment against the Deiblers in the sum of $121,-250.08. Discovery in aid of execution uncovered the fact that the Deiblers owned stock in three Delaware corporations. Distant Horizon Dream, Inc. ("Distant Horizon"), Coastal Resorts Properties, Inc. ("Coastal") and Dinner Bell, Inc. Following attachment of the Deiblers' stock of these corporations, on July 2, 1993 the Superior Court entered an order for the sale of 500 shares of Dinner Bell, Inc. stock, and ten shares of Coastal stock. The sale was scheduled for July 30, 1993. On July 2, 1993, the Superior Court considered and rejected a request by the Deiblers that the notice of public sale required by Section 4972 of Title 10 be distributed or published more broadly than that statute provides. The court instructed the Deiblers that they were free to engage in wider or different advertisement of the forthcoming sale if they thought it beneficial. The notice of public sale that was employed was skeletal. It identified the property to be sold as "100 Shares of Stock–Distant Horizon Dream, Inc"; "500 Shares of Stock–The Olde Dinner Bell Inn, Inc."; and "10 Shares of Stock–Coastal Resort Properties, Inc." No description of the number of authorized and outstanding shares of any of these corporations was set forth, nor were assets and liabilities summarized. It was stated that the property was "the property of David H. Deibler and Carrie J. Deibler."

Shortly before the sale was to occur, and despite the attachment of the stock, the Deiblers purported to dissolve all three corporations by filing certificates of dissolution with the Secretary of State and purported to deed to themselves the real estate that constituted the principal assets of Dinner Bell, Inc. and Coastal. This maneuver was discovered at the last moment by the Prickett firm who brought the matter before the Honorable T. Henley Graves, the judicial officer who had entered the sale order. In a conference telephone call the day before the sale Judge Graves orally instructed the Deiblers to re-

* Sitting Pursuant to Supreme Court Rule 2(a) and Article IV, § 12 of the Delaware Constitution.

verse the steps that they had purported to take. The Deiblers did not, however, attempt to do so promptly. At the sheriff's sale, according to the opinion below, which is not challenged in this respect, "the sale proceeded, but the Deiblers made the decision not to reverse the dissolutions and not to convey the real property back to the respective corporations. This was announced at the sale." *Atlantic Properties Group, Inc. v. Deibler,* C.A. 93M–11–001 (Graves, J., Jan. 6, 1994) at 4, 1994 WL 45433.

At the sale only one bidder participated. Atlantic, a wholly-owned subsidiary of Guardian Capital Corporation ("Guardian"), a creditor of the Deiblers with a substantial mortgage on the Dinner Bell Inn property, bid $5,000 for the Deiblers' Dinner Bell, Inc. stock and $12,000 for their Coastal stock. No bid was made for the Distant Horizon stock. The Deiblers made no bid of their own, nor did the Prickett firm which had come to an agreement with Guardian concerning the bidding. That agreement was to the effect that the Prickett Firm would not bid if Guardian promised either to bid $100,-000 or to pay to the Prickett Firm, if Guardian (i.e., through Atlantic) prevailed in the bidding at a price less than $100,000, the difference between its winning bid and $100,-000.

After the sale, the Deiblers continued to resist the process. On November 2, 1993 Atlantic filed a civil action in the Superior Court to obtain a writ of possession to the Dinner Bell Inn, which, as noted above, constituted the sole substantial asset of Dinner Bell, Inc. That action drew into issue the validity of title to the stock of Dinner Bell, Inc. acquired by Atlantic as a result of the sheriff's sale. Following two days of taking evidence, the court rejected each of the positions advanced by the Deiblers and granted the writ of possession to Atlantic, requiring the Deiblers to give up possession of the Inn itself to Atlantic. This appeal followed.

## II.

The Deiblers advance three grounds in support of their position that the granting of the writ of possession was reversible error. First, they assert that the notice of sale was entirely inadequate fairly to apprise any potentially interested buyers of the value of their stock. Even if the notice employed did meet the skeletal statutory requirements of Delaware law, they assert that nevertheless it did not in these circumstances afford to them due process of law which is assured to them by the Fourteenth Amendment to the United States Constitution. Second they claim that the Superior Court's conclusion that the results achieved in the sheriff's sale were not such as to make necessary another further effort to sell this property at sheriff's sale was incorrect and constituted an abuse of judicial discretion. Logically related to this contention is the subsidiary claim that the court's determination of the fair market value of the Dinner Bell Inn and of Dinner Bell, Inc. stock was against the weight of the evidence. Third, and also related to the claim that the value achieved was not such as to permit the trial court to confirm the sale, is the claim that the court inappropriately "modified" the record after the close of the evidence to enhance the amount realized from the sale.

As set forth below, we conclude that the notice, while rather far from an ideal towards which we might strive, did meet the formal requirements of Delaware law, and in the circumstances satisfied the requisites of procedural fairness to appellants.

The central ground of the appeal is the claim that, in all events, the small amounts bid were so disproportionate to the fair value of the Dinner Bell, Inc. stock that justice requires a further sale be undertaken, even if the notice is found adequate. We consider this claim below and agree that the amounts realized here are such as to raise a concern that the process misfired, even if one might not identify a legal error embedded in it. But we conclude that considering all of the circumstances, importantly including the Deiblers' own conduct, the Superior Court did not abuse its sound discretion in confirming the sale and issuing the writ of possession. Most pointed in that connection are the Deiblers' efforts to subvert the judicial process by secretly attempting to dissolve the corporations at a time in which all of their capital stock had been attached and was thus in the

custody of the court; their effort to denude those corporations of their assets on the eve of a judicial sale; and their failure to attempt promptly and completely to remove the cloud that their conduct caused. These acts are little short of contemptuous. It cannot be that one can seek, as the Deiblers did, to subvert the operation of the court's legal process and at the same time, seek the discretionary protection that motions to set aside judicial sales afford.

As to the third claim, it is briefly described below. We think it of no materiality. It presents a question of form not substance. While we do understand that matters of form may be of importance in many legal contexts, as we explain below, we cannot conclude that any interest of the Deiblers or of the public interest was affected by the matter of which Appellants complain.

### III.

Before stating the basis for our affirmance of the determination below, we note that in this appeal we have no occasion to address the question whether the Deiblers have waived all rights to complain about any aspect of the sheriff's sale by reason of their apparent failure to file with the Superior Court in a timely way an application to set aside the sheriff's sale. *See* Super.Ct.Civ.R. 69(d) (1991); Victor B. Woolley, 2 *Practice In Civil Actions In Delaware* 768 (1906). With respect to confirmations of sheriff's sales Woolley states:

> **Confirmation.** When land is sold under a *vend. exp.* or other appropriate execution process and there are no objections made to the sale, the sale is confirmed at the return term of the writ, as a matter of course, without any act or decree of the court; and a sale so confirmed is final in its character and effect, and cannot afterwards be inquired into, nor can its validity be controverted collaterally. By the rules of the court, applications to set aside sheriffs' sales must be made on or before the

first Thursday of the term to which the writs are returned, and all sales not objected to on or before the first Thursday, are on the first Friday, confirmed as a matter of course. (footnotes omitted)

While Rule 69(d) modifies slightly the times set forth by Mr. Woolley, the essence of his statement remains the law.[1] Most notably that means that objections to the process by which property is sold on execution are waived if the objector fails to file a timely application to set the sale aside, unless the court finds lack of notice or other basis to relieve the party of the consequences of unexcused delay. *Swiggett v. Kollock*, Del.Super., 3 Houst. 326, 332 (1866); 47 Am. Jur.2d., Judicial Sales § 175 (1969).

The record suggests that this principle would have application here. The sale occurred on July 30, 1993. This appeal results not from a motion to set aside the automatic confirmation contemplated by Superior Court Civil Rule 69(d), but from an independent action for a writ of possession filed months later by Atlantic as buyer of the stock at the sheriff's sale. Thus, it appears that Appellants' right to contest the sheriff's sale process has been waived. We do not, however, predicate our decision upon any such waiver, but simply note it in passing because the matter has not been treated below, nor was it raised by any party to this appeal. We do note it, however, lest in addressing the merits of the Deiblers various contentions on appeal we are misunderstood to approve of any deviation from the settled principle that requires one who seeks to have a sheriff's sale set aside to move promptly, within the times established by Rule 69(d), for that relief.

### IV.

We turn then to the assertion that the notice of the sale was so sketchy and incomplete that a forced transfer of the Deibler's property in this instance denied them due process of law. There is no contention that

---

1. The current practice, which reflects the abolition of terms of court, requires that the sheriff's return of sale be made "on the first Monday of the month succeeding the date of the sale and applications to set aside such sales shall be made on or before the first Thursday succeeding such return date, and all such sales not objected to on or before the first Thursday, shall on the first Friday, be confirmed as a matter of course." Super.Ct.Civ.Rule 69(d).

the terms of 10 *Del. C.* § 4972 have not been complied with in this instance. Rather the claim is that minimal fairness in this context required that more information be included in the notice than was included. The Deiblers say that minimally the notice should have included the fact that the stock to be sold represented all of the outstanding stock of the corporations and should have apprised potentially interested parties where more information might be obtained.

■ In assessing this claim we begin by acknowledging that a person's right to due process of law continues throughout the execution process and that right impresses certain limitations upon that process. Due process of law, for example, requires that reasonable efforts be made to afford the owner of property that is seized for sale notice of that seizure or attachment by the judicial officer and its prospective sale; it requires that a reasonable process be employed to give notice to the public of the sale so that a reasonable price, considering the forced sale nature of the transaction, might be obtained; and perhaps due process may require that a court make some after-the-fact review to assure itself that the process employed in fact operated reasonably. Certainly the last element of protection is of such ancient lineage in our law that one could conclude that it forms part of the basic concept of due process of law in this setting. But we need not finely focus upon that question today. The claim today is not that the process envisioned by our statutes is inconsistent with fundamental conceptions of due process of law, but that the notice that the statute contemplates was, in this instance, too elliptical to serve its apparent purpose.

The sale of corporate stock at an execution sale is a relatively unusual event calling perhaps for more judicial attention than the sale of real estate or other property with a more easily estimated value. We recognize that the notice employed in this case would not supply a good model for the next execution sale of this type of property. We nevertheless conclude that considering all of the circumstances fundamental fairness does not require that the sale of July 30, 1993 be set aside.

■ In the ordinary case the content of the notice of sale will not present a separate subject of judicial consideration. The sheriff will, pursuant to his or her processes and standards, fix and distribute a form of notice. Only if an interested party, *see Burge v. Fidelity Bond & Mortgage Company,* Del Supr., 648 A.2d 414, 418 (1994), either brings the matter before the court prior to the sale or seeks on a Rule 69(d) motion to set the sale aside, will the court be asked to consider the notice. Even then the main inquiry on a Rule 69(d) motion will go to compliance with the terms of the statute and to the overall results the process yielded. It is likely that the content of the notice will, in that setting, be subsumed within these larger inquiries. Only if an interested party brings the matter to court prospectively is the content of a sale notice likely to receive judicial attention. But should the matter of the notice come to the court prior to the sale, efficiency and fairness in procedure would require the complaining party to raise all arguable defects with the notice or to be held to waive them. Here the Deiblers did present to the court questions concerning the notice prior to the sale, but they did not advance any position concerning the content of the notice.

More generally, in our opinion the process contemplated by Subchapter V of Chapter 49 of Title 10 of the Delaware Code affords due process to judgment debtors while being reasonably efficient from the public point of view. Specifically the absence of a requirement for a detailed statement of any chattels or personalty to be sold does not render the process constitutionally defective. Indeed the Deiblers cite no case supporting an opposite conclusion. In concluding that minimal standards of due process of law do not require the sheriff or the court to describe the property to be sold in more detail than was done here, we are mindful that it is in the economic interest of judgment debtors to encourage wide knowledge of and participation in any execution sale of their property. As the court below expressly advised Appellants, judgment debtors are free to supplement such notice as the sheriff may disseminate. As the owner of the property, they not only have the economic interest

rationally to expend the appropriate level of resources on notices, but also have the fullest (and cheapest) access to relevant information.[2] Thus a rational allocation of costs and burdens of this process, as well as the flexible requirements of due process of law certainly can take into account (and rely upon) the superior access to information and superior incentives (at least where some equity of redemption is arguably present) of judgment debtors. In the special case where there is an equity of redemption present (as here) but the debtor is disabled by poverty from supplementing the minimal legal notice, the court may of course on application exercise its broad supervisory discretion by ordering the supplementation of the notice required by Section 4972 of Title 10. But there is no suggestion in this record that the Deiblers were not in a position to protect their interest in the attached stock as the trial court suggested.

Thus because the Deiblers did not raise any question with the court concerning the content of the notice of sale when they appeared prior to the sale to question the notice, and because they themselves took no action to address the defects in the notice that they now complain of, even though they were apprised of the right to do so, we cannot conclude that fundamental fairness requires that the completed sale now be set aside. In fact, of course, the Deiblers not only did not take steps that, so far as the record shows, were in their power to take, but instead engaged in activity designed not to perfect the judicial sale but to subvert it. In these circumstances we could not conclude that the notice employed in the sale resulted in the taking of the Deiblers' property without due process of law.

## V.

Appellants claimed below that the amounts realized in the sales were so small in relation to the fair value of the property subject to sale that the Superior Court certainly must set the sale aside and instigate a new sale of these properties. In order to evaluate this argument the trial court took evidence from

experts on the value of the real estate that constitutes the principal asset of both Dinner Bell, Inc. and Coastal. Based on the values, the trial judge concluded that he would not exercise an informed judgment to set aside either sale for gross inadequacy of price. The Deiblers assert on this appeal that the Superior Court's finding of fair value was against the weight of the evidence and thus they ask this Court to set that finding aside. *See Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972). Beyond that, the Appellants assert that even if the values determined by the Superior Court are assumed to be correct, the failure of that court to set the sale aside constitutes an abuse of discretion that this Court should correct.

█ We are thus asked to set aside a finding of fact and to reverse a discretionary judgment. The standards that guide this Court's review of each of these requests is, of course different. So long as the finding of fact is supported by evidence sufficient to permit a reasonable fact-finder to so conclude, it is our role to affirm, even if our own reading of the evidence might incline us towards a different conclusion in the first instance. *Levitt v. Bouvier*, 287 A.2d at 673. With respect to the question whether the Superior Court breached its sound discretion in failing to set aside the sheriff's sale the standard for our review is whether the court has abused its discretion. This standard is deferential. The late Chief Justice Christie expressed the applicable test as follows:

> Judicial discretion is the exercise of judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of the circumstances and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused. *Chavin v. Cope*, Del.Supr. 243 A.2d [694] 695 (1968); *Larrimore v. Homeopathic Hospital Association of Del.*, Del.Supr., [54 Del. 449] 181 A.2d 573 (1962); *Pitts v. White*, Del.Supr., 109 A.2d 786, 788 (1954).

---

**2.** What did the sheriff know in this case concerning the value of this stock and how is any public

official *reliably* to know such information in the next case involving a closely held business?

*Firestone Tire & Rubber Co. v. Adams,* Del. Supr., 541 A.2d 567, 570 (1988).

With respect to the attack upon the trial court's finding of fact, we note that the parties were far apart in their estimations of the fair value of Dinner Bell, Inc. After hearing the testimony and evaluating it, the trial judge concluded that the valuation opinion of Appellant's expert was unreasonably high and that the valuation opinion of Atlantic's expert was more credible. *See Seaford Assocs. v. Board of Assessment,* Del.Supr., 539 A.2d 1045, 1048 (1988). The Court adjusted that opinion in minor degrees in light of articulated factors. Its conclusion was that the assets of Dinner Bell, Inc. had an estimated fair value of $1,836,087 and its estimated liabilities were $859,124. With respect to Coastal the trial court determined its assets to have a fair market value of $950,000 and to be subject to liens of $425,-577.. We have reviewed the record and conclude that these conclusions are supported by sufficient evidence and should be affirmed. *Levitt v. Bouvier,* Del.Supr., 287 A.2d at 673 (1972).

With respect to Appellants' claim that even if these are the correct estimations of Dinner Bell, Inc.'s and Coastal's assets and liabilities, nevertheless the Superior Court abused its discretion by failing to set aside the sheriff's sale, we are unable to agree.

■ Appellants argue that even accepting the trial court's fact finding, the net value of Dinner Bell, Inc. was approximately a million dollars. Yet the highest bid for all of its stock was only $5,000. How, Appellants ask, can such a result not be set aside on the basis of shocking inadequacy of price? But, the court below did not analyze the financial results of the sale in this way. Rather it considered the value of the Dinner Bell, Inc.'s *assets* as a base value. It then considered the value achieved for the Deiblers .in connection with the execution sale to be in excess of the price paid at the sale itself in two respects. First, as noted above, Atlantic had agreed with the Prickett firm that if Atlantic prevailed in the bidding it would pay to that firm the difference between its bids and $100,000. Thus Atlantic as part of its bid assumed an obligation to pay, on the Deiblers' account, $83,000, in addition to its bid. The trial court counted this as part of the consideration received by the Deiblers. Secondly, following the close of the evidence and upon consideration of the questions before it, the Superior Court ascertained that Atlantic was willing to forego a deficiency judgment against the Deiblers personally on a note the Deiblers secured by a mortgage on the Dinner Bell Inn property. The deficiency was in the amount of $736,087.51. Thus, relying upon *Girard Trust Bank v. Castle Apartments, Inc.,* Del.Super., 379 A.2d 1144 (1977), the Superior Court reasoned that the Deiblers benefitted to the extent of approximately $850,000 from the sale of an asset worth at most $1.8 million. Finally the Superior Court noted that other (non-Guardian) liens existed and were deserving of consideration. *See Briehler v. Poseidon Venture, Inc.,* R.I.Supr., 502 A.2d 821, 822, *cert. denied,* 476 U.S. 1166, 106 S.Ct. 2884, 90 L.Ed.2d 973 (1986) (encumbrances on property should be considered when assessing adequacy of price).

Thus the Superior Court concluded that, while the Deiblers were benefitted somewhat less than 50% of the fair market value of Dinner Bell, Inc.'s assets, *see Burge v. Fidelity Bond & Mortgage Company,* Del.Supr., 648 A.2d 414, 419 (1994), in the circumstances it was nevertheless sufficient to affirm the sale. A significant role in this determination was played by the fact that the Deiblers were themselves in part responsible for some confusion that surrounded the sale.

If one may properly count the $736,087 forgiveness by Guardian of the deficiency against the Deiblers personally and the $83,-000 credit to the Deiblers judgment debt to the Prickett Firm, as sale proceeds, then, while the amount realized by the judgment debtor from the sheriff's sale falls toward the bottom of the range customarily employed, it nevertheless is sufficient in the circumstances to preclude us from concluding that an abuse of judicial discretion has occurred. We can apprehend no reason why in fairness to the judgment debtors these financial benefits to them should not be counted in this analysis. Surely it is universally recognized that a valid debt paid or released constitutes

a financial benefit to the debtor. *See Girard Trust Bank,* 379 A.2d at 1146–47. That these amounts came to benefit the debtors not by way of direct sale proceeds but by reason of the agreements of the creditors do not, in the circumstances here, disqualify them from consideration. While an agreement that restrains bidding at a judicial sale should be regarded as suspect and may, in a proper case, itself constitute a ground for the exercise of the Superior Court's discretion to set aside a sale under Superior Court Rule 69, in this instance it was certainly within the trial court's discretion to conclude that the Prickett–Guardian agreement did not substantially disadvantage Appellants. Thus there is, insofar as we are able to see, no reason not to take those benefits into account.

The financial benefits to the Deiblers flowing from the waiver of Guardian's right to a deficiency judgment against them similarly is a real benefit entitled to be considered when a court determines whether the entire process was fair to the judgment debtors. The only basis that Appellants assert for not considering this benefit is the claim that the record on the application for the writ of possession did not contain any evidence of such a benefit. Rather it is claimed that after the close of the evidence at the hearing the trial judge inappropriately inquired of Atlantic/Guardian's counsel whether Guardian would be willing to waive its right to collect any deficiency from the Deiblers. While this was not an *ex parte* communication, the Appellants contend that the trial court was required to decide the application on the record created at the evidentiary hearing and his considering the response to a post-hearing inquiry was reversible error. While the general principle that a court must decide disputed facts on the record evidence is, of course, elementary, it has no application here. We here deal with a question of form not substantial rights. There is no question that, subject to review for abuse of discretion, a court that is required to exercise a discretionary judgment may condition the grant of a discretionary remedy upon a party agreeing to take voluntary action that the court itself could not or might not order. This is a fairly common practice in the Court of Chancery where the court is often required to exercise informed discretion, as when it grants any distinctly equitable remedy, such as an injunction. Indeed, it was precisely this technique of conditioning the availability of discretionary relief that the Superior Court employed in the *Girard Trust Bank* case that was relied upon below. *Girard Trust Bank* has been repeated cited approvingly by this court, most recently in *Burge v. Fidelity Bond & Mortgage,* 648 A.2d at 418. Thus, it is apparent that the court below could have reached the same result simply by conditioning the grant of the writ on the waiver by Guardian of its right to collect a deficiency, as was done in *Girard Trust Bank.* It is therefore apparent that no substantial right of the Deiblers was affected by the communication of which they complain. The value that the Deiblers received from the waiver was real, economic value. We cannot conclude that the Superior Court abused its discretion in taking that value into account in declining to, in effect, set aside the sheriff's sale of July 30, 1993. That decision appears to have been "directed by conscience and reason ... and ... has not exceeded the bounds of reason in view of the circumstances [nor] so ignored recognized rules of law or practice so as to produce injustice," *Firestone Tire & Rubber Co. v. Adams,* 541 A.2d at 570. Thus we decline to disturb it.

For the foregoing reasons the judgment of the Superior Court is **AFFIRMED.**