# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

B A C HOME LOANS SERVICING LP )
F/K/A COUNTRYWIDE HOME LOANS )
SERVICING LP, )
 )
   Plaintiff, )
  v. )  C.A. No. N10L-01-106 ALR
 )
DIANA P. CUNNINGHAM AND )
ANDRE CUNNINGHAM, )
 )
   Defendants. )

Submitted: April 25, 2017
Decided: May 1, 2017

## ORDER

### *Upon Plaintiff's Petition for Writ of Possession*
### GRANTED

This is a case arising from Defendants' default on their mortgage and the subsequent foreclosure proceedings. After sheriff's sale of the subject property was complete and in response to Plaintiff's Petition for Writ of Possession, Defendants appeared for the first time and made argument regarding a claimed modification of their loan. Defendants asserted that their communications with the various loan servicers in this case were inconsistent with Plaintiff's representations to the Court, and there was some concern that the actual dealings between the parties diverged from the legal posture presented during the proceedings.

Accordingly, by Order dated October 11, 2016, this Court denied Plaintiff's Petition for Writ of Possession pending an evidentiary hearing.[1] Several hearings were held and the parties supplemented the record with written submissions. The Court is now satisfied that the record is fully developed and the issue of Defendants' alleged loan modification can be decided as a matter of law.

Upon consideration of the Petition for Writ of Possession filed by Plaintiff; statutory and decisional law; the Superior Court Civil Rules; the facts, arguments, and legal authorities set forth by the parties; and the entire record in this case, the Court hereby finds as follows:

1. Plaintiff is a Delaware limited partnership that operates as a subsidiary of Bank of America, N.A. ("Bank of America"). Defendants are individuals and citizens of Delaware who are self-represented litigants.

2. On June 13, 2007, Defendants executed a promissory note ("Note") for a $600,619.00 loan in favor of the Note's original holder, Countrywide Bank, FSB, a subsidiary of Countrywide Financial Corp. (collectively "Countrywide"). On the same day, Defendants executed and delivered a mortgage ("Mortgage") on a single-family residential property located in Middletown, Delaware ("Property") as security for the Note.

---

[1] *BAC Home Loans Serv. LP v. Cunningham*, 2016 WL 5937805 (Del. Super. Oct. 11, 2016).

3. Defendants have lived at the Property since June 2007, and currently reside at the Property with their family.

4. By their terms, the Note and Mortgage are transferable without notice to the borrower. Moreover, the Mortgage provides that a sale or transfer of the Note or Mortgage may result in a change in the borrower's loan servicer. The loan servicer assumes certain rights under the Mortgage, including the collection of periodic payments from the borrower. The Mortgage permits the holder of the Note to foreclose on the Property if Defendants fail to make timely payments at the contract rate.

5. In July 2008, Bank of America acquired Countrywide and obtained substantially all of Countrywide's home mortgage business. Countrywide became a wholly owned subsidiary of Bank of America. Bank of America ceased using the Countrywide name in April 2009. As a Bank of America home mortgage subsidiary, Plaintiff is the current owner of the Note.

6. Defendants have had three separate loan servicers since 2008. Bayview Loan Servicing, LLC was Defendants' first loan servicer. OCWEN Loan Servicing, LLC was Defendants' second loan servicer. Caliber Home Loans, Inc. is Defendants' third and current loan servicer.

7. On January 13, 2010, Plaintiff filed a complaint in Superior Court seeking entry of judgment against Defendants for the principal sum owed on the

Note. According to the complaint, Defendants failed to pay required monthly installments pursuant to the Mortgage when due. The complaint does not specify exactly when Defendants stopped making monthly payments pursuant to the Mortgage. However, Plaintiff's review of Defendants' payment history as reflected in Plaintiffs' Statement of Amount Due indicates that Defendants owed $112,554.04 in late charges and unpaid interest at the time Plaintiff filed the complaint. Defendants concede that they are currently in default of payment on the Mortgage, and have been for several years.

8. The Sheriff's Office made numerous attempts to serve process on Defendants at the Property. Service of process was eventually successful on May 28, 2010. Nevertheless, Defendants failed to file an answer or otherwise respond to Plaintiff's complaint.

9. In the meantime, also in 2010, Plaintiff sent a letter to Defendants offering a trial loan modification pursuant to the federal Home Affordable Modification Program ("Trial Modification Offer"). Defendants made payments pursuant to the Trial Modification Offer at a reduced mortgage rate for a six-month period. After accepting payments for six months, Plaintiff rejected the loan modification and returned all payments received during the six-month period.

10. By letter dated April 21, 2011, after the case docket reflected an extended period of inactivity, the Court requested that Plaintiff provide a status

4

update. In response, Plaintiff requested that the Court transfer the case to the dormant docket pending the outcome of an agreement between Plaintiff and Defendants whereby Plaintiff allowed Defendants additional time to cure their default. The Court moved the case to the dormant docket as requested.

11. On May 11, 2011, only two weeks later, Plaintiff requested that the case be returned to active status. On the same day, Plaintiff moved for default judgment against Defendants for the amount owed under the Note and Mortgage.

12. On January 12, 2016, Plaintiff purchased the Property as the highest bidder at sheriff's sale.[2] Defendants received notice of the completed sale but did not object or otherwise seek to have the sale set aside.

13. On April 19, 2016, Plaintiff filed the Petition for Writ of Possession that is currently before the Court.

14. After sheriff's sale of the Property was finalized and in response to Plaintiff's Petition for Writ of Possession, Defendants appeared and contended that Defendants' payments pursuant to the Trial Modification Offer constituted a contractual modification to the original loan.[3] The parties presented

---

[2] Plaintiff assigned its bid to LSF9 Master Participation Trust on or about March 14, 2016. Accordingly, Plaintiff requests that the Writ of Possession currently before the Court be awarded to LSF9 Master Participation Trust.

[3] During a hearing regarding Plaintiff's Petition for Writ of Possession on September 27, 2016, Defendants presented an incomplete version of the Trial Modification Offer. At that time, Plaintiff represented that Plaintiff could not locate the Trial Modification Offer nor ascertain the validity of Defendants'

5

inconsistencies in their communications and Plaintiff could not access relevant documents or respond to the Court's inquiries regarding the alleged modification. However, Plaintiff's counsel did not challenge Defendants' representations. Moreover, Plaintiff's 2011 request to move the case to the dormant docket in a purported effort to allow Defendants to cure their default, followed by Plaintiff's reinitiating of foreclosure proceedings just two weeks later, created further confusion.[4]  Accordingly, by Order dated October 11, 2016, this Court denied Plaintiff's Petition for Writ of Possession pending an evidentiary hearing.[5]

15.    On February 2, 2017, the Court conducted an evidentiary hearing regarding Plaintiff's Petition for Writ of Possession and the parties supplemented the record.

16.    On April 25, 2017, the evidentiary hearing was resumed and the Court considered additional argument and testimony.  Upon conclusion of the April 25,

---

allegations.  Plaintiff explained that it was unable to locate pertinent records of the mortgage mediation process due to the numerous changes in loan servicers and Plaintiff's counsel of record.  Although Plaintiff has undergone multiple changes in counsel of record over the course of this litigation, no substitutions of counsel are reflected on the case docket.

[4] Plaintiff could not respond to the Court's inquiry as to why the case was on the dormant docket for only a two-week period.  Plaintiff's current counsel contacted Plaintiff's former attorney, who had no recollection as to why the case was on the dormant docket for such a short time and no access to relevant records or documents.  However, the timing and change in Plaintiff's position appeared to the Court to reflect the alleged timing and change in the loan servicer's position regarding a potential modification.

[5] *BAC Home Loans Serv. LP v. Cunningham*, 2016 WL 5937805 (Del. Super. Oct. 11, 2016).

6

2017 hearing, the Court closed the evidentiary record and took the matter under advisement.

17.    This Court finds that Defendants' objection to Plaintiff's Petition for Writ of Possession is untimely.  Superior Court Civil Rule 69(d) provides:

> Return of sheriff's sale of real estate shall be made on the third Monday of the month succeeding the date of the sale and applications to set aside such sales shall be made on or before the first Thursday succeeding said return date, and all such sales not objected to on or before the first Thursday, shall on the first Friday, be confirmed as a matter of course.

Delaware courts have repeatedly recognized that an objection to a foreclosure sale after the applicable confirmation period has elapsed is untimely unless the Court finds lack of notice, excusable neglect, or a defect in the sale procedures.[6]

18.    In this case, Defendants received notice of a completed sheriff sale of the Property on March 16, 2016.  Plaintiff filed the Petition for Writ of Possession on April 19, 2016.  The record reflects that Defendants did not object to Plaintiff's Petition for Writ of Possession or otherwise seek to have the sale set aside until July 26, 2016, when Defendants appeared in response to this Court's Rule to Show Cause.[7]  By that time, the sale of the Property was finalized and the time period

---

[6] *Deutsche Bank Nat. Trust Co. v. Goldfelder*, 2014 WL 644442, at *3 (Del. Feb. 14, 2014) (citing *Deibler v. Atl. Props. Grp.*, 652 A.2d 553, 556 (Del. 1995)); *Shipley v. New Castle Cnty.*, 975 A.2d 764, 771 (Del. 2009) (citing *Swiggett v. Kollock*, 1866 WL 949, at *2–3 (Del. Super. Oct. 1, 1866)); *Mortg. Electr. Reg. Sys., Inc. v. Charalambous*, 2012 WL 1409630, at *2 (Del. Super. Jan 13, 2012).
[7] *See* 10 *Del. C.* § 5012.

under Rule 69(d) had elapsed. Moreover, this Court does not find that Defendants lacked notice of the sale, that the sale procedures were defective, or that excusable neglect is applicable. To the contrary, Defendants did have notice of the sale, the sale procedures were not defective, and there is no excusable neglect. Accordingly, this Court finds that Defendants request to set aside the foreclosure sale of the Property is untimely and procedurally barred.

19. Even if this Court accepted Defendants' objection as a timely attempt to set aside the Property's sale, Defendants are not entitled to the requested relief. Upon consideration of the Trial Modification Offer and the supplemented evidentiary record, this Court finds that Defendants have not presented sufficient evidence to establish that Defendants entered into a valid and finalized modification of the original loan. The record supports Plaintiff's position that the Mortgage and Note are the controlling contract between the parties and that the Petition for Writ of Possession must be granted. Moreover, there is no dispute that Defendants are in default of payments.

20. In analyzing the validity of an alleged mortgage modification, the Court must differentiate between finalized contractual amendments to the original loan agreement and post-default negotiations.[8] While a valid modification may be

---

[8] *See Wells Fargo Bank, N.A. v. Williford*, 2011 WL 5822630, at *3 (Del. Super. Nov. 17, 2011).

8

asserted by a mortgagor under the affirmative defense of avoidance,[9] post-default negotiations are considered irrelevant to the validity or legality of the mortgage documents.[10]

21. The Trial Modification Offer contains certain conditions for Defendants to become eligible for a permanent modification of their loan.[11] In addition to requiring a series of initial mortgage payments at a revised rate,[12] the Trial Modification Offer requires Defendants to submit various financial documents and income statements so that the loan servicing entity can assess Defendants' eligibility for a finalized modification.[13] Moreover, the Trial Modification Offer provides that a permanent loan modification is conditioned upon an independent modification agreement that is to be executed by the parties

---

[9] *Id.* (citing *Gordy v. Preform Bldg. Components*, 310 A.2d 893, 893–94 (Del. Super. 1973)); *see also United States v. Golden Acres, Inc.*, 520 F. Supp. 1073, 1079 (D. Del. 1981) (recognizing that parties to a mortgage may make enforceable agreements modifying the terms of payment, and that in some circumstances a mortgagee's conduct may create an estoppel that bars foreclosure).

[10] *Christiana Falls, L.P. v. First Fed. Savs. & Loan Ass'n of Norwalk*, 1986 WL 18356, at *1 (Del. Dec. 30, 1986).

[11] Pl. Ex. 2 at 15 ("I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.").

[12] *Id.* at 1–2, 14.

[13] *Id.* at 1–4, 13–15.

after Plaintiff verifies Defendants' eligibility.[14]  The Trial Modification Offer certifies that Defendants "provided documentation for **all** income that [Defendants'] receive"[15] and reiterates that "[t]he Trial Period Plan is the first step. Upon approval of the return documentation, we will finalize your modified loan terms and send you a loan modification agreement . . . you will need to sign and promptly return to us both copies of the Modification Agreement before your loan can be permanently modified."[16]  The Trial Modification Offer required Defendants to complete and return all documentation by April 1, 2010.[17]

22.  This Court finds that Defendants have not demonstrated that Defendants fulfilled the necessary conditions for a permanent loan modification pursuant to the Trial Modification Offer.  Specifically, the record does not establish that Defendants submitted the required financial documents in a timely fashion, and it is undisputed that the parties never entered into an independent modification agreement as required by the Trial Modification Offer for a finalized amendment to the loan.

23.  This Court understands Defendants' frustration with the troubling post-default negotiation process in this case. Indeed, the confusing communications between the parties and inconsistent presentations to this Court

---

[14] *Id.* at 13, 15, 20.
[15] *Id.* at 13 (emphasis in original).
[16] *Id.* at 20.
[17] *Id.* at 1–4, 14.

are reflected in the case docket and necessitated the expansion of the evidentiary record. However, other than the payments that were returned after the trial modification period as noted, Defendants have resided at the Property since June 2007 and have made no payments towards their indebtedness since before the initiation of these foreclosure proceedings. Upon consideration of the supplemented evidentiary record, this Court finds that Defendants are not entitled to relief as a matter of law or equity.

**NOW, THEREFORE, this 1ˢᵗ day of May, 2017, Plaintiff's Petition for Writ of Possession is hereby GRANTED. The Writ of Possession is hereby STAYED until July 5, 2017.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**